836 A.2d 912

**HYDROPRESS ENVIRONMENTAL SERVICES, INC., Appellee**

v.

**TOWNSHIP OF UPPER MOUNT BETHEL, COUNTY OF NORTHAMPTON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 8, 2003.

Decided Nov. 25, 2003.

480

Ronald J. Karasek, for Tp. of Upper Mount Bethel, County of Northampton, Appellant.

Tracy Lynn Updike, Thomas L. Wenger, for PA State Ass'n of Tp. Sup'rs., Appellant Amicus Curiae.

Craig Prescott Wilson, Harrisburg, Catherine A. Trinkle, Pro Hac Vice, Newark, NJ, Brian S. Montag, Pro Hac Vice, Morristown, NJ, Robert T. Weston, for Hydropress Environmental Services, Inc., Appellee.

Alexandria Makosky, John William Carroll, for PA Chamber of Business & Industry, Appellee Amicus Curiae.

Paul Martin Schmidt, David J. Brooman, for PA Waste Industries Ass'n, Appellee Amicus Curiae.

Randall Gene Hurst, for PA Mun. Authorities Ass'n et al., Appellee Amicus Curiae.

Eugene E. Dice, for PA Septage Mgmt. Ass'n, Appellee Amicus Curiae.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice LAMB.

We granted discretionary review sought by the Township of Upper Mount Bethel, County of Northampton (Township) of the Order of the Commonwealth Court affirming the trial court's grant of summary judgment in favor of Hydropress Environmental Services, Inc. (Hydropress), which, on November 27, 2000, filed an action for declaratory judgment asking the Court of Common Pleas of Northampton County to enter an order declaring Township Ordinance 2001–01(Ordinance) invalid, permanently enjoining the Township from enforcing the Ordinance, and declaring that Hydropress is legally entitled to resume its operations in the Township without having to comply with the requirements of the Ordinance. This appeal presents three issues: whether Hydropress has standing to challenge the Ordinance, whether the Solid Waste Management Act[1] (SWMA) preempts the Ordinance, and whether the Ordinance is a valid exercise of the police powers under the Second Class Township Code.[2] For the reasons discussed below, we affirm.

Hydropress, a New Jersey corporation authorized to conduct business in Pennsylvania, is in the business of processing municipal sludge and residuals into products known as biosolids, which it does primarily at its facility in Phillipsburg, New

1. Act of July 7, 1980, P.L. 380, No. 97, *as amended,* 35 P.S. §§ 6018.101–6018.1003 and the accompanying regulations promulgated by the Pennsylvania Department of Environmental Protection.

2. Act of May 1, 1933, P.L. 103, No. 69, *as amended,* 53 P.S. § 65101 *et seq.*

Jersey. Desiring to spread its biosolids on agricultural lands within the Commonwealth of Pennsylvania, Hydropress applied for and obtained from the Pennsylvania Department of Environmental Protection (PADEP), a beneficial use order approval on May 6, 1997. However, on November 24, 1999, PADEP suspended the use approval. Subsequently, Hydropress and PADEP entered into an interim agreement that permitted Hydropress to conduct demonstration projects at several locations in Pennsylvania. As of the date of the trial court's opinion, no demonstration projects had yet been approved by PADEP for farms located in the Township.[3] However, Hydropress represents that it intends to conduct demonstration projects in the Township once it obtains all necessary approvals. Trial Ct. slip op., February 13, 2001, at 22.

The Township, a township of the second class, is primarily rural, with thousands of acres presently utilized for agricultural purposes, and still has a considerable number of dirt roads and unimproved lanes that are used for access. In October of 2000, the Township enacted ordinance No. 2000–04, which was revised and reenacted as Ordinance No. 2001–01 on February 12, 2001.[4] The Ordinance is entitled "Ordinance for Agricultural Utilization or Other Land Application of Biosolids, Sludge, Septage, or other Waste Material."

Hydropress alleged in its declaratory judgment action that the Ordinance is illegal because the General Assembly has, by enacting the SWMA, preempted all local regulation of the land application of sludge-derived products, and that the nature of the solid waste industry demands uniform statewide regulation. Additionally, Hydropress's declaratory judgment action challenged the Ordinance's requirement, found at Section 4(c)(1), that the cost of improvements to any Township road

**3.** While Hydropress was, at the time of the Commonwealth Court's decision, in the process of submitting application packages for PADEP's approval of demonstration projects at several farms located in the Township, the current status of those applications goes beyond the record that is before us on appeal.

**4.** Ordinance 2000–04 was repealed and reenacted as Ordinance No. 2001–01 in order to cure any advertising or notice defects, in response to claims raised by Hydropress regarding the enactment of Ordinance No. 2000–04.

shall be charged against the landowner, generator, hauler, or non-owner applicator of any waste material. The Ordinance requires that any Township road used to access a waste material site shall be paved to a minimum width of 24 feet and a sufficient depth (as determined by the Township engineer) to withstand traffic loads.[5] Hydropress also challenges Section 7 of the Ordinance which requires applicants for a permit under the Ordinance to post security, in a specified amount, to ensure their compliance with the Ordinance. Hydropress asserts that Ordinance Section 7 is unduly oppressive and, therefore, an unlawful exercise of the Township's police power because the amount of security required, $250.00 per acre of land subject to the application multiplied by the number of expected years of useful life plus five, bears no relationship to the actual cost of performance under the Ordinance.[6]

The Township filed preliminary objections to Hydropress's complaint in which it asserted that because Hydropress was

5. Section 4(c) of the Ordinance provides:

The Board of Supervisors shall require that any township road providing access to the proposed site be a minimum of 24 feet in width and paved with surface and base course of sufficient depth (as determined by the Township Engineer) to withstand traffic loads to be determined by the number and weight of trucks anticipated in the operation of the proposed site.

(1) The Board of Supervisors shall further require that the cost(s) of improvement of any township road to provide this standard of access shall be charged against the applicant either by requiring contribution of monies sufficient to pay for the improvement of the road or by charging truck usage or tipping fees on the operation of the site sufficient to pay for the improvement and maintenance of access roads.

6. Section 7 of the Ordinance provides:

In order to assure the Township that the various tests, duties and obligations imposed upon an applicant by this ordinance are fully performed, security for such performance shall be posted by an applicant before recommending any approval and the issuance of any permit by the Township.

(a) The amount of security shall be Two Hundred and Fifty Dollars ($250.00) per each acre (or part thereof) of application times the expected years of the useful life of the site plus five (5) years. The Board of Supervisors may, upon written request of the applicant, reduce this security on a yearly basis based upon past performance and evidence that the applicant has abided (and will continue to abide) by all of the terms, conditions and provisions of this ordinance.

under suspension by PADEP, it had no existing rights that could be adjudicated by declaratory judgment and thus lacked standing to challenge the Ordinance. The trial court denied the preliminary objections, concluding that Hydropress was a party aggrieved and thus had standing to challenge the Ordinance. *See* Trial Ct. slip op., February 13, 2001. Hydropress then filed a motion for summary judgment claiming that there were no genuine issues of material fact and that the Ordinance was preempted and/or invalid as beyond the police powers of the Township as a matter of law.

The trial court determined that the requirements of Ordinance Sections 4(c)(1) and 7 are beyond the Township's power to enact because the requirements there contained impose standards greatly in excess of those necessary to protect the general welfare. Trial Ct. slip op., May 30, 2001, at 10. In addition, the trial court determined that local regulation of the land application of waste material such as biosolids, septage or sewage sludge is preempted by the SWMA. Having concluded as a matter of law that the Ordinance goes beyond the Township's power to enact and that the Legislature had preempted the field, the trial court granted Hydropress's

(b) The applicant shall so assure the Township by means of a corporate bond or the deposit of liquid funds or negotiable securities in escrow sufficient to cover the cost, as estimated by the Township Z.O. [Zoning Officer] and Engineer, of performing the various tests, duties and obligations imposed by this ordinance.

(1) Any bond shall be furnished under such conditions and in customary form and surety with companies in good standing and doing business in the Commonwealth of Pennsylvania and as all shall be approved by the Board of Supervisors to guarantee and secure that all such tests, duties and obligations are fully and adequately performed and are paid by the applicant; and, the Township shall, in no event, be held liable for the cost of any such duties or tests.

(c) In lieu of a bond, the applicant may deposit cash or negotiable securities with the Township or an FDIC-insured bank to guarantee and secure the same requirements as set forth above.

(1) In the event that such cash or securities are deposited, said deposit must be made pursuant to an escrow agreement signed by the applicant and prepared and approved by the Township Solicitor and the Board of Supervisors. The escrow agent for the deposit of such cash or security shall be located in Northampton County and shall be subject to approval by the Board of Supervisors.

motion for summary judgment. Trial Ct. slip op., May 30, 2001, at 13–19. The Commonwealth Court affirmed the trial court's February 13, 2001 order with respect to standing, based on the trial court's accompanying opinion, and affirmed the trial court's May 30, 2001 decision, granting Hydropress's motion for summary judgment with regard to preemption and the power to enact, again based on the accompanying opinion.

The first issue before this Court is whether Hydropress had standing to challenge the Ordinance. As this Court explained in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), the principle of standing is that where a person is not adversely affected in any way by the matter which he seeks to challenge, he is not aggrieved and thus has no standing to obtain a judicial resolution of that challenge. 346 A.2d at 280; *see also Nye v. Erie Insurance Exchange*, 504 Pa. 3, 470 A.2d 98, 100 (1983). This court also noted in *William Penn* that "it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law" but that in order to be aggrieved, a party must show that it has a substantial, direct and immediate interest in the claim sought to be litigated. *William Penn*, 346 A.2d at 280–83. In *South Whitehall Township Police Service v. South Whitehall Township*, 521 Pa. 82, 555 A.2d 793 (1989), we further explained that:

A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

555 A.2d at 795 (citations omitted).

The Township argues that because Hydropress was suspended from conducting its operations in Pennsylvania gener-

ally at the time of the filing of the declaratory judgment action, Hydropress had no presently existing rights that could be adjudicated, and thus had no standing to challenge the Ordinance. Appellant's Brief at 37–38. While the Township admits that at that time, PADEP had approved Hydropress to conduct various demonstration projects within the Commonwealth, it explains that, according to the stipulated facts between the parties, as described *supra*, p. 483, 836 A.2d p. 914, no demonstration projects had yet been approved by PADEP for farms located in the Township. This is the basis of Appellant's claim that Hydropress does not have standing to challenge the Ordinance. As we have noted, Hydropress, at the time of this adjudication, was in the process of submitting application packages for PADEP's approval of demonstration projects at several farms located in the Township, but the outcome of that process is not a matter of record.

The trial court held, as affirmed by the Commonwealth Court, that the interim agreement between Hydropress and PADEP, permitting Hydropress to operate within the Commonwealth, gave Hydropress the right to seek permission to operate within the Township and that the deprivation of that right constituted a direct, immediate, and substantial harm as a result of the Ordinance. Trial Ct. slip op., February 13, 2001, at 4. In addition to the fact that Hydropress had applied to PADEP to conduct demonstration projects in the Township, we note that the Ordinance does not require that a party receive a permit from PADEP before receiving a permit from the Township. Instead, the Ordinance only requires that a permit be obtained from PADEP prior to the onset of site application. *See* Ordinance Section 4(a), R14.[7] Therefore, the Township's reliance on PADEP approval as a prerequisite to

7. Section 4(a) of the Ordinance provides:
SECTION 4: *Requirements and Performance Standards Applicable to Application of Waste Material.* Prior to approving a site for application of waste material and the issuance of a permit, the Township Board of Supervisors ... shall require that:
(a) Any application of waste material shall be in compliance with the requirements of the NCCD and the PA DEP and that, prior to the onset of application, a general permit be obtained from the PA DEP and/or NCCD for said operations.

standing is unfounded as Hydropress is free to seek a permit from the Township without PADEP approval as long as it obtains a PADEP permit prior to the onset of the application of biosolids.

At the time of the filing of the declaratory judgment action, Hydropress was in a position to apply to the Township for a permit to conduct operations that constituted Hydropress's regular business activity. Therefore, Hydropress's interest in the matters regulated by the Ordinance is substantial in that it surpasses the common interest of citizens generally. Hydropress's interest is direct because Hydropress has shown that the imposition of the requirements of the Ordinance could cause harm to Hydropress's interest in conducting its lawful business activity by, according to Hydropress's argument, imposing regulations in a field that has been preempted by the SWMA, or that goes beyond the Township's police power. Further, Hydropress's interest is immediate because Hydropress has shown that there is a causal connection between the passing of the Ordinance, and the injury to Hydropress, which in this case is its exposure to an ordinance that is allegedly preempted by the SWMA or outside of the realm of the Township's police power. In *Empire Sanitary Landfill, Inc. v. Com., Dept. of Environmental Resources*, 546 Pa. 315, 684 A.2d 1047 (1996), this Court held that a waste hauler and landfill permitted by the department had standing to challenge Lehigh County's solid waste management flow control ordinance, which required that all solid waste within the county be deposited only at designated facilities, even though the landfill had never applied to be a designated facility under the ordinance. As we explained in that case:

It is argued that the Commonwealth Court erred in so ruling because the parties raising the issue lack standing. While the record reveals that the appellants, both in-state residents, failed to make requisite application to be designated, it can not be said that they have no stake in the outcome for if the Ordinance is declared unconstitutional, then it is "business as usual" for them.

684 A.2d at 1057 n.15. Identical considerations support Hydropress's standing in this case. Therefore, the Commonwealth Court correctly concluded that Hydropress had standing to challenge the Ordinance at the time of the filing of the declaratory judgment action.

■ Since we have determined that the Commonwealth Court was correct in concluding that Hydropress had standing to challenge the Ordinance, we next turn to the Township's claim that the Commonwealth Court erred in affirming the trial court's grant of summary judgment on the ground of preemption. In a declaratory judgment action, just as in civil actions generally, "[s]ummary judgment may be granted only in those cases in which the record clearly shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Harleysville Insurance Companies v. Aetna Casualty and Surety Insurance Company*, 568 Pa. 255, 795 A.2d 383, 385 (2002) (citing *P.J.S. v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 723 A.2d 174, 176 (1999)). A trial court's order granting summary judgment will not be reversed unless it is established that the court committed an error of law or clearly abused its discretion. *Id.*; *see also, Cochran v. GAF Corporation*, 542 Pa. 210, 666 A.2d 245, 248 (1995).

■ As a general matter, the state is not presumed to have preempted a field merely by legislating in it. The Legislature must clearly express its intent to preempt a field in which it has legislated. The test for preemption in this Commonwealth is well established. Either the statute must state on its face that local legislation is forbidden, or "indicate[ ] an intention on the part of the legislature that it should not be supplemented by municipal bodies." *Western Pennsylvania Restaurant Association v. Pittsburgh*, 366 Pa. 374, 77 A.2d 616, 620 (1951). The consequence of a determination of preemption is severe. "If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation in that area is permitted." *Council of Middletown Tp., Delaware County v. Benham*, 514 Pa. 176, 523 A.2d 311, 313 (1987). Recognizing the

clarity with which an intent to preempt must be expressed by the Legislature and the significance of such a determination, "[w]e have found an intent to totally preempt local regulation in only three areas: alcoholic beverages, banking and anthracite strip mining." *Benham*, 523 A.2d at 314 (citing *Commonwealth v. Wilsbach Distributors, Inc.*, 513 Pa. 215, 519 A.2d 397 (1986), and *Pittsburgh v. Allegheny Valley Bank*, 488 Pa. 544, 412 A.2d 1366 (1980)(in which members of this Court expressed strong reservations concerning the extension of the preemption doctrine to preclude local taxation in the banking and liquor areas)).

In *Benham*, we concluded that local regulation was not preempted by the Sewage Facilities Act, the Act of January 24, 1966, P.L. 1535 (1965), *as amended*, 35 P.S. §§ 750.1–750.20, notwithstanding the extensive regulatory efforts of the then Department of Environmental Resources in that area. Our conclusion had its basis in the absence of an express legislative statement of an intent to preempt together with the clear import of provisions of the Sewage Facilities Act expressly contemplating such local action. "[W]e conclude[d] that the legislature plainly intended to combine state and local power into a comprehensive regulatory scheme for sewage disposal." *Benham*, 523 A.2d at 314.

The same considerations require us to conclude that preemption was not intended in this case. The SWMA contains no express preemptive mandate. Just to the contrary, the primary legislative statement of the purposes of the SWMA, contained in 35 P.S. § 6018.102(1), is to "establish and maintain a cooperative State and local program...." PA-DEP's delegated duties include cooperation with local units of government, 35 P.S. §§ 6018.104(2) and (3), and the training of local municipal personnel, 35 P.S. § 6018.104(4). County health departments are expressly delegated powers of administration and enforcement. 35 P.S. § 6018.106(a). Local municipalities are expressly charged with planning responsibilities, 35 P.S. § 6018.201, as well as permit review and comment functions. 35 P.S. § 6018.504. Finally, municipal solicitors are expressly authorized to commence actions at law and in equity

to restrain violations of the SWMA, 35 P.S. § 6018.604(b), and it is "declared to be the purposes of [the Act] to provide additional and cumulative remedies...." 35 P.S. § 6018.607. This is the language of intergovernmental coordination and cooperation, not of preemption.

We must, therefore, turn to the issue of the Township's authority generally to enact the regulations here at issue. We find specifically that the ordinance in question exceeds the police power of the Township. In that regard:

it is well settled that townships, political subdivisions of the Commonwealth, possess only such powers as have been granted to them by the legislature, either in express terms or which arise by necessary and fair implication or are incident to powers expressly granted or are essential to the declared objects and purposes of the townships....

*Commonwealth v. Ashenfelder,* 413 Pa. 517, 198 A.2d 514, 515–16 (1964). In *Ashenfelder,* we rejected the argument that the Second Class Township Code delegated "the 'widest possible powers to the Township Supervisors for the purpose of allowing them to take whatever appropriate measure might be necessary for securing the safety of persons or property within the Township' ". *Id.* at 516 (quoting the municipality's written argument to the Court). We held that the language of the Code and, particularly, the general grant of power contained in Section 702 thereof, codified at 53 P.S. § 65747, was "inappropriate and inadequate to evidence any intent on the part of the legislature to delegate to second class townships vast and extensive police powers; certainly no intent is manifest or evident to grant powers to second class townships to act in areas where the Commonwealth itself, through legislative enactments, has provided regulation." 198 A.2d at 516.

In support of its power to enact the regulations in question, the Township points only to its delegated power under the Second Class Township Code and under the Vehicle Code to keep its public roads in good repair and free of obstructions. These specific powers do not encompass the challenged requirements. The Township has been expressly delegated the

specific power to require certain landowners to make road improvements, including improvements to public roads located adjacent to the landowner's property, in connection with the landowner's application for subdivision or land development. *See* Section 503(2) of the Pennsylvania Municipalities Planning Code ("MPC"), the Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10503(2). Additionally, the Township has been expressly delegated the power under certain circumstances and following the completion of described studies, plans, and local legislation, to assess by means of an "impact fee" the cost of certain improvements to public roads located at a distance from the lands of the persons or entities so assessed. *See* Section 503–A(a) of the MPC, 53 P.S. § 10503–A(a). Finally, the Township has been expressly delegated the power to require the posting of financial security to ensure the completion of improvements to public roads where they are required to be constructed by private parties as a condition to land development plan approval. *See* Section 509 of the MPC, 53 P.S. § 10509. No legislative delegation of power to townships of the second class includes the express power to charge to road users generally or any particular subset thereof the cost of improving the roads on which they travel or to require such payers to post financial security. The specific legislative delegations of power to which we have referred would have been entirely unnecessary if, as the Township here contends, its general authority to keep roads in good repair included implicitly the power to enact ordinances like that here at issue.

Moreover, SWMA § 6018.104(18) includes, *inter alia,* a specific grant of power *to the Department* to require applicants for permits to engage in the beneficial use or processing of municipal or residual waste, to post financial security. The delegation of this power to the Department further supports the conclusion that no such delegation may properly be inferred from the Legislature's silence on the subject in those enactments, including the Second Class Township Code, by which the Township was invested with its lawful powers. The regulations here challenged are beyond the authority properly exercised by the Township.

Therefore, the Commonwealth Court's Order is reversed to the extent that it affirmed the trial court's order declaring the Ordinance in its entirety invalid and permanently enjoined the Township from enforcing the Ordinance in its entirety. The Commonwealth Court's Order is affirmed to the extent that it affirmed the trial court's order granting summary judgment in favor of Hydropress, and this Court notes that this mandate effects declaratory judgment in favor of Hydropress only with respect to Sections 4(C) and 7 of the Ordinance, permanently enjoining enforcement of said sections of the Ordinance by the Township.

Justice CASTILLE files a concurring and dissenting opinion in which Justice SAYLOR and Justice EAKIN join.

Justice NEWMAN files a dissenting opinion.

Justice CASTILLE concurring and dissenting.

I join the Lead Opinion insofar as it concludes that appellee had standing to pursue the declaratory judgment action. On the merits, however, I find myself in partial dissent, as I would affirm the order below outright on grounds of preemption.

After careful consideration of the matter, including the briefs of the various amici, it is my view that the courts below correctly recognized that the pervasive state regulation in this specialized area, embodied in and authorized by the Solid Waste Management Act (SWMA), 35 P.S. § 6018.101 *et seq.*, indicates a clear legislative intention to preempt the field from local regulation. As the lead opinion correctly recognizes in its discussion of the Township's police power, the Township has only those powers delegated to it by the General Assembly. While I agree with the lead opinion that the statement of purpose accompanying the SWMA encourages cooperative efforts on the part of state and local authorities, that statement of purpose is not an implied delegation of power to units of local government to add levels of regulation beyond that which is specifically authorized in the SWMA. Rather, it is the Pennsylvania Department of Environmental Protection (PA-

DEP), as the expert in this area, which alone is delegated the comprehensive regulatory authority. Absent a similar or reserve delegation of power to local authorities within the SWMA, I do not view this legislation as remotely contemplating some reserved or implied regulatory role for local government. Indeed, the notion that the General Assembly contemplated that a subject such as this should be subject to the inevitable balkanization that would follow from permitting onerous regulations propounded by the myriad of local governmental entities, unskilled in this area, which exist in this Commonwealth, is implausible.

As this Court noted in *Western Pennsylvania Restaurant Ass'n v. Pittsburgh,* 366 Pa. 374, 77 A.2d 616 (1951), when "the general tenor of [a] statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted legislation held invalid." *Id.* at 620 (citations omitted). In my view, even absent an express statement from the General Assembly, the pervasive state regulation of the specialized field here, and the absence of any delegated authority to local government to co-occupy the field, makes plain a legislative intent not to permit supplemental municipal regulation.[1]

I should also note that I do not disagree with the lead opinion's analysis of the alternative question of whether the Ordinance exceeds the general police authority reserved to Townships of the Second Class. But, in my mind, this is the inevitable reverse side of the preemption argument: *i.e.,* had any such power been delegated to such a unit of local government, the preemption argument necessarily would fail. The important question presented here is one which I would resolve on a state-wide basis, without inviting a municipality-by-municipality inquiry into the otherwise-delegated powers reserved to the various forms of local government recognized

---

1. It is a separate question, not raised here, whether the allocation of the cost of road improvements to the prospective users of those roads—such as required by Section 4(c) of the Ordinance—could exist within the context of a more general ordinance which did not specifically target vehicles carrying biosolids or other waste materials.

in this Commonwealth. I would hold that the SWMA preempts **any** local regulation of the land application of waste material such as biosolids, septage or sewage sludge. Therefore, I would not reach the additional and alternate question of whether the Ordinance exceeds the Township's police power.

As I would affirm the order below outright, I join only in that portion of the mandate which affirms.

Justices SAYLOR and EAKIN join this concurring and dissenting opinion.

Justice NEWMAN dissenting.

I respectfully dissent, as I do not believe that Hydropress Environmental Services, Inc., (Hydropress) had standing to pursue the present declaratory judgment action.

"A party seeking judicial resolution of a controversy in this Commonwealth must, **as a prerequisite,** establish that he has standing to maintain the action." *Bergdoll v. Kane,* 557 Pa. 72, 731 A.2d 1261, 1268 (1999) (quoting *Nye v. Erie Insurance Exchange,* 504 Pa. 3, 470 A.2d 98, 100 (1983) (emphasis supplied)). "The question of standing is rooted in the notion that for a party to maintain a challenge to an official order or action, he must be aggrieved in that his rights have been invaded or infringed." *Franklin Twp. v. Com., Dept. of Environmental Resources,* 500 Pa. 1, 452 A.2d 718, 719 (1982). We have repeatedly observed and held that to possess standing, "a party must (a) have a substantial interest in the subject-matter of the litigation; (b) the interest must be direct; and (c) the interest must be immediate and not a remote consequence." *Id.; see also Bergdoll,* 731 A.2d at 1268; *William Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975) (plurality opinion).

"[T]he requirement of a 'substantial' interest simply means that the individual's interest must have substance—there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *William Penn,* 346 A.2d at 282; *see also South Whitehall Twp. Police Service v. South Whitehall Twp.,* 521

Pa. 82, 555 A.2d 793 (1989). The second, "direct" prerequisite "simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains." *William Penn,* 346 A.2d at 282. Finally, the "immediate" element of the analysis "concern[s] . . . the nature of the causal connection between the action complained of and the injury to the person challenging it." *Id.* at 283.

Presently, Hydropress alleges that its right to apply biosolids within Upper Mt. Bethel Township (Township) is being restricted by Township Ordinance 2001–01 (Ordinance). However, as acknowledged by the litigants, even without the Ordinance, Hydropress could not have applied biosolids within the Township, without first seeking **and** obtaining permission to do so from the Pennsylvania Department of Environmental Protection (DEP). Thus, the interest asserted by Hydropress was not affected by the Ordinance. Instead, it was the agreement reached between DEP and Hydropress that restricted the ability of Hydropress to conduct business within the Township. Accordingly, Hydropress cannot satisfy the "direct" or the "immediate" elements of the standing analysis.

In its brief to this Court, Hydropress all but concedes that it has not submitted any applications with DEP seeking permits to apply biosolids within the Township.[1] Clearly, if Hydropress could not operate within the Commonwealth without first obtaining a permit from DEP and Hydropress did not even submit an application to receive approval by DEP at the time it challenged the Ordinance, Hydropress did not have the permission of DEP to operate within the Township at that time.[2] Thus, the Ordinance did not directly cause any harm to Hydropress.

1. *See* Brief for Hydropress, p. 41 (stating that "Hydropress **now prepares an application** package with respect to each of its potential land application sites for review by [DEP]." (Emphasis supplied)).

2. Unlike the Majority, I do not view the current status of the applications that Hydropress submitted to the DEP as relevant in addressing the issue of standing. It is important, however, that at the time Hydropress challenged the Ordinance, as admitted in their own brief, *see note* 1, *supra,* Hydropress had not submitted the application to obtain a DEP permit.

Moreover, in my opinion, the concept of immediacy as used for purposes of standing, necessarily retains its common meaning and, therefore, requires the unfettered right to act. *See* Black's Law Dictionary (6th ed.), p. 749 (defining "immediate" as "[p]resent; at once; without delay; not deferred by any interval of time.... The word denotes ... that action is or must be taken either instantly or without any considerable loss of time"); Webster's Third International Dictionary (Unabridged) (1986), p. 1129 (giving the primary definition for "immediacy" as "freedom from or absence of an intervening medium" and defining "immediate" as, *inter alia,* "acting or being without the intervention of another object, cause or agency; ... having no individual intervening; ... [and] occurring, acting, or accomplished without loss of time; made or done at once"). Accordingly, I agree with the dissenting opinion of Judge Friedman, wherein she stated the following:

> When the trial court issued its opinion, Hydropress was "currently preparing application packages to be submitted for [DEP's] review and approval of locations [within the Township]." In other words, Hydropress had not even completed an application to obtain DEP approval to operate within the Township. Thus, the "immediate" cause of the inability of Hydropress to conduct business within the Township is the failure of Hydropress, itself, to complete an application to submit to DEP. If Hydropress fails to complete the application, or submit it to DEP, [the] Ordinance ... will **never** become the "immediate" cause of the inability of Hydropress to conduct business within the Township. At some point in the future, **after** Hydropress has completed an application and submitted it to DEP and **after** DEP has reviewed and approved the application, [the] Ordinance ... may become the "immediate" cause of the inability of Hydropress to operate within the Township. At the present time, however, it seems to me that the causal connection between the inability of Hydropress to operate within the Township and [the] Ordinance ... is too remote.

*Hydropress Environmental Serv., Inc. v. Twp. of Upper Mt. Bethel,* No. 1436 CD 2001, pp. 3–4 (Pa.Cmwlth. March 7, 2002)

(memorandum) (Friedman, J., dissenting) (internal citation omitted) (emphasis in original).

Further, as cited by the Majority, the trial court found that "the interim agreement between Hydropress and DEP ... **gave Hydropress the right to seek permission to operate** within the Township." Majority Opinion, p. 487, 836 A.2d p. 917. Thus, the trial court **did not find** that the agreement **gave Hydropress the right to operate,** which is, in my opinion, what is necessary to have a "direct" and an "immediate" interest to have standing in the present case. Simply, I do not view having the right to seek permission to do something on the same footing as being actually permitted to do it. Accordingly, unlike the Majority, I do not perceive the trial court's holding as an impediment to my conclusion that Hydropress did not have standing to challenge the Ordinance.[3] On the contrary, the finding that the agreement with DEP gave Hydropress **the mere right to seek permission to operate** within the Township, as opposed to **the unfettered right to operate,** only serves to reinforce my conclusion that the interest of Hydropress was not "direct" or "immediate," because it did not have the right to operate within the Township at the time it challenged the Ordinance. This analysis does not vary because the Ordinance "does not require that a party receive a permit from DEP before receiving a permit from the Township," see Majority Opinion, p. 487–88, 836 A.2d p. 917, since this observation does not obviate the fact that, irrespective of the requirements set forth in the Ordinance, Hydropress cannot apply biosolids within the Township without first obtaining a DEP permit.

Finally, unlike the Majority, I view Empire Sanitary Landfill, Inc. v. Com., Dept. of Environmental Resources, 546 Pa.

---

**3.** I note that the holding of the trial court, which stated that the Ordinance deprived Hydropress of its right to seek permission to operate within the Township constituted "direct, immediate, and substantial harm," is a legal conclusion that is not entitled to any deference by this Court, as our review of legal questions is plenary. See Phillips v. A–Best Products Co., 542 Pa. 124, 665 A.2d 1167, 1170 (1995); Young v. Young, 507 Pa. 40, 488 A.2d 264, 265 (1985) (stating that where a case "involves only questions of law, we are not bound by the conclusions of the courts below ....").

315, 684 A.2d 1047 (1996), as wholly inapposite to the present situation. In *Empire*, a county waste management plan designated three landfills for waste disposal and required all municipal waste to be disposed of at one of these designated disposal facilities. 684 A.2d at 1051. An operator of a non-designated waste disposal site and a trash hauler, who contracted to dispose its waste at that site, challenged the county's waste disposal plan. *Id.* at 1051–53. In rejecting an argument that the challengers had no standing, this Court commented that the parties, in fact, had standing, "for if the [waste management plan] is declared unconstitutional, then it is 'business as usual' for them" or, in other words, that the trash hauler could return to delivering municipal waste to the non-designated waste disposal site. *Id.* at 1057 n. 15.

This is not what is taking place in the instant matters. Even if the Ordinance was found to be invalid, Hydropress still does not have the right to apply biosolids within the Township, without a permit from the DEP. Thus, even without the Ordinance, Hydropress cannot conduct "business as usual."

Accordingly, I would find that Hydropress did not have standing to challenge the Ordinance and would reverse the Commonwealth Court on this ground without addressing the substantive issues raised by the parties.