# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Penneco :
Environmental Solutions, LLC :
from the decision of The Zoning : No. 931 C.D. 2018
Hearing Board of the Borough of Plum : Argued: February 11, 2019
 :
Appeal of:  Borough of Plum :

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
   HONORABLE ROBERT SIMPSON, Judge
   HONORABLE P. KEVIN BROBSON, Judge


**OPINION**
**BY JUDGE SIMPSON**    **FILED: March 8, 2019**


   In this zoning appeal, the Borough of Plum (Borough) asks whether the Court of Common Pleas of Allegheny County[1] (trial court) erred in reversing the decision of the Zoning Hearing Board of the Borough of Plum (ZHB), that denied Penneco Environmental Solutions, LLC's (Penneco) substantive validity challenge to Borough Ordinance No. 731-004 (zoning ordinance).  The ZHB denied Penneco's substantive validity challenge on the ground that it was not ripe for review where Penneco had not yet obtained federal and state permits for the proposed conversion of its production oil and gas well into an underground injection well.  Agreeing that the ZHB erred in concluding Penneco's substantive validity challenge was not ripe for review, we affirm the trial court.

---

[1] The Honorable Joseph M. James presided.

# I. Background

The ZHB made the following findings. Sedat, Inc. (Sedat) owns the property located at 1800 Old Leechburg Road in the Borough (property). Penneco is an affiliate of Sedat. The property lies in a rural residential zoning district.

Since approximately 1989, Penneco Oil Company (Penneco Oil) operated a gas production well on the property. Penneco Oil has a permit from the Pennsylvania Department of Environmental Protection (DEP) to operate the gas production well. Penneco, whose association to Penneco Oil is unknown, seeks to convert the well from a producing well to an underground injection well. An underground injection well serves to dispose of exploration and production fluids from oil and gas operations by placing the fluids into porous geologic formations. The disposal of waste products from oil and gas operations is subject to the oversight of the U.S. Environmental Protection Agency (EPA).

In March 2016, Penneco submitted an application to the EPA requesting permission to operate an underground injection well on the property. About six months later, Penneco filed a substantive validity challenge to the zoning ordinance with the ZHB. Penneco challenged the zoning ordinance claiming it excluded the operation of an underground injection well in all zoning districts in the Borough. Penneco also asserted the zoning ordinance was preempted by state and federal law. The parties consented to postponement of a hearing before the ZHB on the validity challenge until after the EPA conducted a public hearing on Penneco's application to the EPA to operate the injection well on the property.

In June 2017, the Borough publicly announced its plan to adopt or propose a new zoning ordinance. The EPA subsequently conducted a hearing at which it received public comment regarding Penneco's proposed injection well.

In August 2017, Penneco requested that its substantive validity challenge be placed on the ZHB's agenda. A few weeks later, Penneco and the ZHB agreed to list the matter on the ZHB's October 2017 agenda. A hearing ensued before the ZHB.

In its subsequent decision, the ZHB explained:

> The current status of the EPA's consideration of the permit is that subsequent to the hearing the EPA is considering and responding to the public comments from that meeting and comments that were submitted subsequent to that during the comment period. It is Penneco's understanding that the EPA intends to respond to those comments by the end of 2017 and then will go on through the remaining permitting process in early 2018.

ZHB Dec., 11/17/17, Finding of Fact (F.F.) No. 18.

Penneco represented that it would file an application with DEP for a permit to operate the injection well if the EPA gave its approval, as EPA approval must precede DEP approval. As a result, Penneco had not yet submitted an application to DEP. Penneco will not be permitted to operate an injection well on the property if the EPA and DEP do not grant the required permits and approvals.

Based on these findings, the ZHB made the following conclusions of law. Ripeness is defined as the presence of an actual controversy. In re Borough of Blakely, 25 A.3d 458 (Pa. Cmwlth. 2011). The ripeness doctrine requires an evaluation of "the fitness of the issues" for determination, as well as the hardship to the parties of withholding judicial consideration. Am. Council of Life Ins. v. Foster, 580 A.2d 448, 451 (Pa. Cmwlth. 1990). The ZHB determined no actual controversy yet existed here, and one may never exist, because Penneco had not yet received the required approvals from the EPA and DEP.

The ZHB stated that the issue of whether the zoning ordinance is invalid because, as alleged, it is exclusionary or preempted is of no consequence if the EPA and DEP do not grant the required approvals. The ZHB explained that, if it invalidated the zoning ordinance, Penneco would not be permitted to operate its proposed injection well because it lacked the requisite federal and state approvals. The ZHB further determined this matter would be moot if those approvals were not granted. The ZHB also stated the zoning ordinance imposes no hardship on Penneco unless Penneco receives the required approvals. For these reasons, the ZHB denied Penneco's substantive validity challenge. Penneco appealed to the trial court.

Without taking additional evidence, the trial court reversed. The trial court stated that, contrary to the ZHB's determinations, under Pennsylvania law, municipalities may not require outside agency permits before providing zoning approval. Therefore, the trial court determined the ZHB erred in concluding Penneco's substantive validity challenge was not ripe for review.

4

Further, the trial court determined Penneco met its burden of proving the zoning ordinance improperly excluded a recognized, legitimate business activity; thus, the trial court held the zoning ordinance was *de jure* exclusionary and invalid. As a result, the trial court determined Penneco was entitled to site-specific relief as to its proposed underground injection well on the property. The Borough now appeals to this Court.

## II. Issue

The Borough raises only one issue on appeal.[2] It asserts the ZHB properly denied Penneco's substantive validity challenge for lack of ripeness. Whether the zoning ordinance is *de jure* exclusionary, and whether, if so, Penneco is entitled to site-specific relief, are not matters before us in this appeal.

## III. Discussion
### A. Contentions

The Borough argues that "[r]ipeness has been defined as the presence of an actual controversy; it requires a court to evaluate the fitness of the issues for judicial determination, as well as the hardship to the parties of withholding court consideration." Blakely, 25 A.3d at 466. The Borough further asserts a court should look to "existing facts" when evaluating the ripeness of an issue. Borough of Centralia v. Commonwealth, 658 A.2d 840, 842 (Pa. Cmwlth. 1995). Here, it

---

[2] Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. Penn Street, L.P. v. E. Lampeter Twp. Zoning Hearing Bd., 84 A.3d 1114 (Pa. Cmwlth. 2014).

contends no actual controversy exists as Penneco has yet to receive final, un-appealable approval from either the EPA or DEP.

The Borough maintains that, when a ZHB member questioned Penneco's counsel as to the effect that denial of approval by the EPA or DEP could have on Penneco's proposed injection well, Penneco's counsel stated:

> It's possible that the [ZHB] could grant Penneco's petition and Penneco from the [ZHB] has the authority to go forward with placing an underground injection well at its proposed location, but if the EPA or DEP rejects [Penneco's] permit or places other conditions on it, then Penneco is certainly subject to that federal and state authority.

Reproduced Record (R.R.) at 103a-04a.

Without EPA or DEP approval, the Borough argues, Penneco will have no ability to develop the property for purposes of installing an injection well. R.R. at 104a. Thus, the Borough asserts, absent approval of both outside agencies, and the issuance of necessary permits, Penneco was deprived of no legal rights. Id.

The Borough further contends that, at the October 2017 ZHB hearing, Penneco's counsel indicated that the EPA and DEP permits remained outstanding. R.R. at 123a. Specifically, Penneco's counsel stated: "We are here today asking with our petition for the Borough, but the EPA permit, once that is approved, then we would go through the DEP permitting process." Id. As such, the Borough maintains, the ZHB's actions have not affected the immediate use of the property, and any alleged loss is purely conjectural. Centralia.

6

The Borough argues Penneco's lack of the necessary federal and state approvals renders any alleged injury or deprivation hypothetical, and, therefore, not ripe for consideration. Centralia. The Borough contends the current situation, where a lack of existing facts renders an issue unripe, is analogous to the situation presented in Centralia. The Borough asserts that, as of the date it filed its brief to this Court, there exist no facts or actions taken by the Borough or the ZHB that impacted Penneco's use of the property, and any asserted loss by Penneco is hypothetical. Id.

For its part, the ZHB argues Penneco filed its challenge, claiming the zoning ordinance excluded the operation of an underground injection well in all zoning districts in the Borough, and that the zoning ordinance was preempted by state and federal law. In order to operate an underground injection well, the ZHB asserts, Penneco concedes it is required to obtain EPA and DEP approval. At the time Penneco challenged the zoning ordinance, it lacked approval from either agency.

Without an actual controversy, the ZHB argues, a matter is not suitable for judicial determination. The ZHB asserts it denied Penneco's challenge because there was no actual controversy, as Penneco had yet to obtain regulatory permission from the relevant federal and state agencies. Thus, the ZHB contends, the matter was not ripe for determination.

The ZHB maintains that, before obtaining EPA or DEP approval, Penneco challenged the zoning ordinance claiming it excluded the operation of

underground injection wells in all zoning districts, and that the zoning ordinance was preempted by federal and state law. R.R. at 12a.

The ZHB argues it decided no actual controversy existed, and one may never exist, because Penneco had yet to receive the required approvals from the EPA and DEP. F.F. No. 18. Under the ripeness doctrine, the ZHB asserts, this Court should refrain from making a determination as the answer would be based on Penneco's assertions of speculative, hypothetical events that may or may not occur in the future. The ZHB contends a determination by the ZHB regarding the validity of the zoning ordinance would have been speculative and based on hypothetical events because Penneco had yet to receive the necessary federal and state approvals.

Penneco counters that the trial court correctly reversed the ZHB because the ZHB erred in denying Penneco's challenge to the validity of the exclusionary zoning ordinance. Penneco argues the Borough waived all bases for appeal except for that stated in its question presented and argued in its brief—that the ZHB correctly denied Penneco's challenge to the zoning ordinance for want of "ripeness" where Penneco had not received permits for its proposed use from state or federal agencies. Appellee Penneco Environmental Solutions, LLC's Br. at 10.

Penneco asserts Pennsylvania law is clear that a municipality may not require outside agency permits or approvals before providing zoning approval. Penneco contends that, while it is undisputed that at the time of the ZHB hearing it had not yet received federal and state permits to operate an underground injection

8

well, that is not an appropriate basis upon which the ZHB could deny Penneco's challenge to the validity of the exclusionary zoning ordinance. Nevertheless, Penneco maintains, the ZHB denied Penneco's challenge on that basis, committing reversible error. Therefore, Penneco requests that this Court affirm the trial court's reversal of the ZHB and the grant of site-specific relief.

Penneco asserts its substantive validity challenge was ripe for review by the ZHB because the zoning ordinance's failure to provide for the use of an underground injection well anywhere in the Borough directly and presently prevented Penneco's proposed use of the property. See, e.g., Braksator v. Zoning Hearing Bd. of Northampton Twp., 641 A.2d 44, 45 (Pa. Cmwlth. 1994) (holding that a landowner is directly affected when "prevented from doing something that he wants to do[,]" and appeal was ripe where landowners were "presently faced with a choice" as to their development).

Specifically, Penneco contends, Pennsylvania law is clear that municipalities may not require outside agency permits before providing zoning approval. Lehigh Asphalt Paving & Constr. Co. v. Bd. of Supervisors of E. Penn Twp., 830 A.2d 1063 (Pa. Cmwlth. 2003). Thus, courts repeatedly reject arguments that federal or state permits are prerequisites to challenging the validity of an ordinance or seeking zoning approval. See Hydropress Envtl. Servs., Inc. v. Twp. of U. Mount Bethel, Cty. of Northampton, 836 A.2d 912 (Pa. 2003); Lehigh Asphalt; see also Seneca Res. Corp. v. Highland Twp., No. 15-60 ERIE, 2016 WL 1213604, at *4 (W.D. Pa. Mar. 29, 2016) (unreported) (stating that because a developer must obtain zoning approval to obtain a DEP permit, a municipality may

9

not require the developer to obtain a DEP permit before challenging the validity of an ordinance; otherwise, such reasoning would invoke "images of the proverbial cat chasing its tail"); Pa. Gen. Energy Co., LLC v. Grant Twp., C.A. No. 14-209 ERIE, 2015 WL 6001550, at *9 (W.D. Pa. Oct. 14, 2015) (unreported) (rejecting township's argument that "focuse[d] on the proposition that [the applicant] must obtain both … DEP and EPA permits as a 'condition precedent' for standing to pursue this legal action"; "lack of a DEP permit is irrelevant to the legal claims pled in this case").

For example, Penneco maintains, addressing the issue of standing to challenge the validity of an ordinance, the Pennsylvania Supreme Court noted that the ordinance at issue did "not require that a party receive a permit from [DEP] before receiving a permit from the [t]ownship," but only required that a DEP permit be obtained "prior to the onset of site application." Hydropress, 836 A.2d at 916-17. Thus, the Court in Hydropress held, "the [t]ownship's reliance on [DEP] approval as a prerequisite to standing is unfounded as [the applicant] is free to seek a permit from the [t]ownship without [DEP] approval as long as it obtains a [DEP] permit prior to" conducting any activities requiring such a permit. Id. As in Hydropress, Penneco argues, the express terms of the zoning ordinance here do not require a party to obtain approvals from federal or state agencies as a pre-condition to receiving zoning approval or substantively challenging the zoning ordinance.

Likewise, Penneco argues, in the context of a special exception application, this Court explained that the Pennsylvania Municipalities Planning

10

Code[3] (MPC), "does not require the prior issuance of state permits before a ZHB decision" can be made. Lehigh Asphalt, 830 A.2d at 1074. Rather, federal and state permits are not prerequisites to zoning approval because "[n]othing in the MPC or the particular ordinance … relieves the ZHB of its statutory duty to decide the application nor does the absence of a DEP permit hamper the ZHB's ability to perform that duty." Id.; accord Oasis v. Zoning Hearing Bd. of S. Annville Twp., 94 A.3d 457, 463 (Pa. Cmwlth. 2014).

At most, Penneco asserts, while this Court consistently holds that local municipalities must approve zoning applications even where federal and state permits will be required, but have not yet been obtained, it acknowledges that in some cases a zoning permit may include a condition that the applicant obtain necessary federal and state permits before beginning development, rather than rejecting an application outright. See, e.g., In re Drumore Crossings, L.P., 984 A.2d 589 (Pa. Cmwlth. 2009).

Here, Penneco contends, contrary to the above authority, the ZHB did not consider any specific conditions related to ancillary permits, but instead rejected Penneco's substantive validity challenge outright. As such, Penneco maintains, the ZHB's denial of Penneco's substantive validity challenge on the basis that Penneco had not yet received EPA and DEP permits was an error of law.

Penneco further argues the Borough cites no relevant authority to support its legal arguments. It asserts the Borough cites only two cases in its brief

---

[3] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10101-11202.

11

to attempt to support its assertion that Penneco's validity challenge was not ripe for review by the ZHB. Penneco contends these cases, Blakely and Centralia, are distinguishable and do not provide a basis for the Borough's appeal.

Moreover, Penneco maintains, the improper, exclusionary zoning ordinance presents an actual controversy ripe for judicial review, because it stands as an obstacle to Penneco's ability to obtain a DEP permit. See 53 P.S. §10916.1[4]; DEP Policy for Consideration of Local Comprehensive Plans and Zoning Ordinances in DEP Review of Authorizations for Facilities and Infrastructure (DEP Land Use Policy) at 5[5]; see also Seneca. Therefore, Penneco asserts, this Court, like the trial court, should conclude the ZHB erred in denying Penneco's substantive validity challenge based on a lack of ripeness.[6]

## B. Analysis

Pursuant to Section 916.1(a)(1) of the MPC: "A landowner who, on substantive grounds, desires to challenge the validity of an ordinance … or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge … to the [ZHB] under [S]ection

---

[4] Section 916.1 of the MPC was added by the Act of December 21, 1988, P.L. 1329.

[5] See DEP Land Use Policy, Doc. No. 012-0200-001, available at http://www.depgreenport.state.pa.us/elibrary/GetDocument?docId=7448&DocName=POLICY%20FOR%20CONSIDERATION%20OF%20LOCAL%20COMP%20PLANS%20AND%20ZONING%20ORD%20IN%20DEP%20REVIEW%20OF%20PERMITS%20FOR%20FAC%20AND%20INFRASTRUCTURE.PDF%20%20%3Cspan%20style%3D%22color%3Ablue%3B%22%3E%3C%2Fspan%3E# (last visited February 15, 2019).

[6] In a footnote, Penneco explains, in March 2018, the EPA granted Penneco's permit for the underground injection well, authorizing Penneco to operate its well in the Borough. See EPA Permit No. PAS2D701BALL.

909.1(a) [of the MPC,] [53 P.S. §10909.1(a)[7]] ….″  See also Section 1204.2 of the zoning ordinance ("The [ZHB] shall hear challenges to the validity of th[e] [zoning] [o]rdinance … raising substantive questions.").  This is the procedure Penneco followed here.

Rather than considering the merits of Penneco's challenge, however, the ZHB denied it on the ground it was not ripe for review, as Penneco had not yet obtained (and could possibly never obtain) EPA and DEP approval for its proposed underground injection well.  See ZHB Op., Concls. of Law Nos. 4-8.  The ZHB erred in denying Penneco's substantive validity challenge on this basis.

The rationale behind the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudications, from entangling themselves in abstract disagreements over administrative policies …."  Braksator, 641 A.2d at 45 (citation omitted).  The criteria a court will consider are: (1) whether the issues are adequately developed for judicial review; and (2) what hardship the parties will suffer if review is delayed.  Id. (citing Foster).  "This Court will only take jurisdiction over a particular matter where a[n] … ordinance has actually been applied to a litigant."  Id.

Here, Penneco's substantive validity challenge is ripe for review. Through its petition, Penneco claimed that, as presently written, the zoning ordinance does not permit Penneco's proposed underground injection well, the use it seeks to commence, in any zoning district throughout the Borough.  R.R. at 63a-

_____

[7] Section 909.1(a) of the MPC was added by the Act of December 21, 1988, P.L. 1329.

13

83a. Thus, it asserted, the zoning ordinance, on its face, directly prohibits its proposed use. As such, the issue of whether the zoning ordinance was, in fact, *de jure* exclusionary was sufficiently developed for review by the ZHB. Braksator.

In addition, Penneco will suffer hardship if consideration is delayed as it already expended resources surveying the site and creating a plat map in connection with its validity challenge. R.R. at 36a. Penneco also expended resources applying for an EPA permit and undergoing a public hearing before the EPA in connection with its proposed underground injection well. F.F. Nos. 9, 14. Moreover, it appears Penneco's inability to obtain a merits review by the ZHB will delay its ability to obtain a DEP permit because, prior to commencing review of a permit application, DEP requires information as to a proposal's compliance with applicable local ordinances. See DEP Land Use Policy at 5.

Further, in Lehigh Asphalt, this Court held, where an applicant sought a special exception for its proposed quarry expansion, and the ordinance did not require presentation of a DEP permit prior to the ZHB's consideration of the requested zoning relief, the ZHB erred in denying the application as incomplete on the ground the applicant did not provide a DEP permit. We stated: "Nothing in the MPC or the particular ordinance applicable here relieves the ZHB of its statutory duty to decide the application nor does the absence of a DEP permit hamper the ZHB's ability to perform that duty." Id. at 1074.

Here, as in Lehigh Asphalt, neither the MPC nor the zoning ordinance requires submission of an EPA or DEP permit with an applicant's substantive

14

validity challenge as a prerequisite to review by the ZHB. Thus, the ZHB erred in denying Penneco's challenge on that basis. Id.; accord Hydropress (party had standing to challenge ordinance and seek permit from township where it applied for permit from DEP and ordinance did not require party to receive DEP permit before receiving township approval).

In addition, this Court repeatedly holds that, where permits from an agency outside a municipality are required for a land development proposal, approving the proposal with a condition that outside agency permits are received, as opposed to outright denial, is appropriate. See, e.g., Whitehall Manor, Inc. v. Planning Comm'n of City of Allentown, 79 A.3d 720 (Pa. Cmwlth. 2013); In re McGlynn, 974 A.2d 525 (Pa. Cmwlth. 2009); Kohr v. L. Windsor Twp. Bd. of Supervisors, 910 A.2d 152 (Pa. Cmwlth. 2006); CACO Three, Inc. v. Bd. of Supervisors of Huntington Twp., 845 A.2d 991 (Pa. Cmwlth. 2004); Morris v. S. Coventry Twp. Bd. of Supervisors, 836 A.2d 1015 (Pa. Cmwlth. 2003). Indeed, our Supreme Court cautions that when assessing the propriety of conditional approval, the practicalities of the situation must be considered. Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh, 907 A.2d 494 (Pa. 2006) (grant of special exception with conditions where applicant showed willingness and ability to satisfy conditions and where it was reasonable that approval precede formal execution of binding contract for off-site parking). Here, the ZHB did not consider any conditions on Penneco's requested zoning relief relating to Penneco obtaining EPA or DEP permits; instead, it issued an outright denial of Penneco's substantive validity challenge.

In addition, this case is distinguishable from <u>Blakely</u> and <u>Centralia</u>, the two takings cases cited by the Borough. First, in <u>Centralia</u>, the Commonwealth, its Department of Community Affairs, and the Columbia County Redevelopment Authority (redevelopment authority) initiated a program to relocate the borough's residents based on health and safety threats from a long-burning fire in the borough's underground mines. A small number of residents declined to relocate. The redevelopment authority notified these residents that it would condemn their surface properties. However, the borough owned the subsurface areas of the properties, which included mineral and coal reserves.

The borough filed a petition for appointment of a board of viewers, alleging the planned surface acquisition of the borough's remaining occupied properties and relocation of residents would result in a *de facto* taking of the subsurface mineral and coal reserves. Ultimately, this Court held the borough's petition was not ripe for review where it did not aver *existing* facts that could establish a *de facto* taking. Rather, it merely alleged the redevelopment authority *will* effect a *de facto* taking once it completed the acquisition and relocation plan. The borough alleged the planned condemnation of all remaining surface properties would ultimately result in the "destruction and elimination of [b]orough government and effective elimination of the [b]orough as an entity." <u>Id.</u> at 842. Thus, the borough alleged its rights to the subsurface mineral and coal reserves would ultimately escheat to the Commonwealth. Given the hypothetical nature of these averments, we held the borough's petition was not ripe for review as no actual controversy existed. To that end, the borough did not aver facts "which are certain to occur …. " <u>Id.</u> Thus, we reasoned:

The averments in [the borough's] petition are hypothetical. No party has presently restricted [the borough's] right to mine. There is no allegation that [the borough] cannot now mine the subsurface areas it owns because surface areas will be taken and residents will be relocated. Nor can it be established at this point that [the borough] will cease to exist or will be definitely prevented from mining in the future. In sum, there has been no de facto taking of [the borough's] right to use and enjoy the subsurface. It could be said that, in a sense, there may eventually be a de facto taking of the borough itself, but not the rights to the subsurface. Apart from the plain circumstance that governmental activity has not affected the immediate use of the property, any threatened loss of the property is conjectural.

Id. at 843 (citation omitted).

More recently, in Blakely, relying on Centralia, we upheld a common pleas court's order that dismissed a landowner's petition for appointment of a board of viewers. There, the landowner claimed he could not build homes on lots he owned because the borough installed a plastic drainage pipe in a ditch that cut off vehicular access to his property from an adjacent road. The landowner alleged this prohibited him from building homes along the road, and, in order to develop the lots, he would need to replace at least part of the plastic pipe with reinforced concrete pipe.

Contrary to the landowner's assertions, this Court explained, among other things: (1) the borough never informed the landowner he could not build homes on the lots; (2) the landowner did not consult the planning commission or submit actual plans to the borough; (3) the landowner did not explain why access was not possible from another road abutting the landowner's property; and (4) the

landowner did not explain how he intended to resolve his need for variances for the lots. Thus, we held the landowner's claims of injury and substantial deprivation of the use of his property were speculative; as a result, his *de facto* taking claim was premature.

Unlike <u>Blakely</u> and <u>Centralia</u>, the case before us does not involve a claimed *de facto* taking. Additionally, unlike the speculative claims at issue in those cases, here Penneco filed its petition with the ZHB challenging the substantive validity of the zoning ordinance on the ground that it *presently excludes* Penneco's proposed use in all zoning districts throughout the Borough. R.R. at 63a-83a. Thus, before the ZHB, Penneco asserted: "There's no mechanism by which Penneco can apply to the Borough for this use." R.R. at 136a. Further, Penneco planned for its proposed underground injection well by surveying the property and creating a plat map, which it submitted as an exhibit to its petition challenging the validity of the zoning ordinance. R.R. at 36a. Also, as stated above, Penneco expended resources applying for an EPA permit to operate its proposed underground injection well, and it underwent a hearing on the application. Further, as indicated above, Penneco's petition is ripe for review because it impacts Penneco's ability to obtain a DEP permit.

## IV. Conclusion

Based on the foregoing, we affirm the trial court's determination that the ZHB erred in concluding Penneco's substantive validity challenge was not ripe for review. Because this is the sole issue raised by the Borough in its brief on appeal, we do not consider the propriety of the trial court's determinations that

18

Penneco met its burden of proving the zoning ordinance is, in fact, impermissibly exclusionary, or that Penneco is entitled to site-specific relief.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re:  Appeal of Penneco | : | |
| Environmental Solutions, LLC | : | |
| from the decision of The Zoning | : | No. 931 C.D. 2018 |
| Hearing Board of the Borough of Plum | : | |
| | : | |
| Appeal of:  Borough of Plum | : | |

# O R D E R

**AND NOW**, this 8th day of March, 2019, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.

---

ROBERT SIMPSON, Judge