UTILITY WORKERS UNION OF
AMERICA, LOCAL 69, AFL–
CIO, Petitioner

v.

PUBLIC UTILITY COMMISSION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 10, 2004.

Decided July 14, 2004.

Publication Ordered Oct. 1, 2004.

Scott J. Rubin, Selinsgrove, for petitioner.

Lawrence F. Barth, Harrisburg, for respondent.

William T. Hawke, Harrisburg, for intervenor, The People Natural Gas Co. d/b/a Dominion Peoples.

BEFORE: PELLEGRINI, Judge, LEADBETTER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

Utility Workers Union of America, Local 69, AFL–CIO (Union) petitions for review of the order of the Public Utility Commission (Commission) holding that a utility may use outside contractors to read customers' gas meters. The Union contends that the Commission erred in holding that neither Section 2206(a) of the Public Utility Code, 66 Pa.C.S. § 2206(a), nor 52 Pa. Code § 56.12, prevents a utility from using outside contractors to read its customers' gas meters. After review, we dismiss this case on the basis of mootness.

The parties stipulated to the facts of this case.[1] Peoples Natural Gas Company (Peoples) provides natural gas service to the public in 16 counties in Pennsylvania. The Union is a collective bargaining representative for various employees of Peoples. In September 2002, Peoples needed to fill a meter reading position in Blair County, Pennsylvania. When no union members bid on the job, Peoples used one employee of an outside contractor to read meters in Blair County. Peoples intended to use the services of the outside contractor only until it could hire a full-time meter reader. Peoples subjected the employee of the outside contractor to the same thorough background check to which it subjects its own employees. Peoples also provided reasonable supervision to the outside contractor's employee while he read meters.

The Union filed a formal complaint against Peoples with the Commission in September 2002, just after Peoples permitted the employee of the independent contractor to begin reading meters. The complaint alleged that Peoples' practice of using outside contractors to read meters violated 66 Pa.C.S. § 2206(a) and the Commission's regulation at 52 Pa.Code § 56.12. Section 2206(a) provides:

> (a) Quality.—A natural gas distribution company shall be responsible for customer service functions consistent with the orders and regulations of the commission, including, but not limited to, meter reading . . .

52 Pa.Code § 56.12 provides in turn: "Except as provided in this section, a utility shall render bills based on actual meter readings by utility company personnel."

---

1. Although the parties stipulated to the facts of this case at the prehearing conference before the Administrative Law Judge (ALJ), at oral argument before this court they asked that the case be remanded to resolve factual issues. We deny this request. First, we are dismissing the matter as moot, so there is no need to resolve factual issues surrounding the Union's complaint. Second, the parties waived the right to remand to resolve factual issues when they stipulated to the facts.

In response to these averments,[2] Peoples filed an answer and new matter admitting that it allowed an employee of an outside contractor to check meters, but denying that it violated the provisions in question. By the time the initial prehearing conference was held in late January 2003, Peoples had hired, as its own employee, the individual who had been reading meters while working for the outside contractor. At the initial prehearing conference, counsel for both parties recognized that this made the complaint moot, and requested that the case be converted to a petition for the issuance of a declaratory order. The ALJ presiding at the conference, Wayne L. Weismandel, granted the parties' joint request and then granted judgment on the pleadings to Peoples. In doing so, the ALJ held that 66 Pa.C.S. § 2206(a) does not prohibit the use of an outside contractor's employee to perform meter reading services for Peoples. The ALJ concluded that the statutory language was clear and unambiguous. He noted that the legislature could have used other language if it wanted to mandate that the utility itself perform the activity.

The ALJ also held that the Commission's regulation at 52 Pa.Code § 56.12 does not prohibit the utility from using an outside contractor to perform meter reading. He noted that the Commission has approved the use of outside contractors in the past. *See Moyer v. PECO Energy Co.*, PUC Docket Number C–00003176 (January 24, 2001); *In re The Contracting for Service with Bermex, Inc.*, PUC Docket Number M–00960801 (September 18, 1996); *Fritz v. Peoples Natural Gas Co.*, PUC Docket Number C–00957277 (February 8, 1996).[3]

Both parties filed exceptions. The Commission generally agreed with the ALJ's resolution of both issues and denied the Union's exceptions.[4] According to the Commission, Section 2206(a) does not prohibit a utility from using an outside contractor to perform meter reading but the utility remains responsible for the quality of the service and the conduct of its contractors as they perform the service. With respect to the regulation, the Commission concluded that the phrase "utility company personnel" is broader than "utility company employee" and encompasses contractor personnel monitored and controlled by the utility.

On appeal to this court, the Union contends that the Commission erred in concluding that neither 66 Pa.C.S. § 2206(a), nor 52 Pa.Code § 56.12 prohibits a utility from using employees of an outside contractor to read customers' meters. However, a decision on the merits of the case is precluded by the doctrine of mootness, notwithstanding the parties' desire that we address the underlying issue. Although the parties have not argued mootness, we may raise it *sua sponte*. *Dep't of Pub. Welfare, Farview State Hosp. v. Kallinger*, 532 Pa. 292, 615 A.2d 730 (1992).

 It is well-established that an actual case or controversy must exist at all stages of the judicial or administrative process. If not, the case is moot and will not be decided by this court. *Musheno v.*

---

**2.** The complaint also alleged that Peoples' practice of using employees of outside contractors to check meters violated its own tariff; that issue is not before this court.

**3.** The ALJ also held that the language of Peoples' tariff prohibited Peoples from using employees of outside contractors to read meters.

The Commission disagreed, but the Union did not raise the issue in this appeal.

**4.** The Commission also granted Peoples' exception to the ALJ's conclusion that Peoples' tariff precluded the use of an outside contractor for meter reading.

*Dep't of Pub. Welfare*, 829 A.2d 1228 (Pa. Cmwlth.2003). Here, since the complaint was filed, Peoples has hired the only outside contractor whom it was using to read meters. At the initial prehearing conference, the parties agreed that this rendered the complaint moot and requested that the proceedings be converted to a petition for a declaratory order. However, this change in the nature of the pleading is of no moment. Even a proceeding seeking a declaratory order must be grounded upon an actual case or controversy. *See, e.g., Independence Blue Cross v. Pa. Ins. Dep't*, 802 A.2d 715 (Pa.Cmwlth.2002).

■ A moot case will be dismissed unless at least one of the following exceptions exists. First, the conduct at issue is likely to be repeated but will necessarily escape judicial review. Second, there is a great public interest in the resolution of the controversy. Third, one party will suffer a substantial detriment if the controversy is not judicially resolved. *Musheno*, 829 A.2d at 1232. The case sub judice meets none of these exceptions.

First, the record contains no evidence that Peoples will continue to use independent contractors to read meters. At oral argument, counsel for the Union argued that Peoples would continue to use independent contractors to read customers' meters, and alluded to one similar incident that occurred in 1996. Aside from the fact that two incidents in eight years do not necessarily establish repetitive conduct, the record is devoid of any evidence to support counsel's assertions. The Union not only failed to show that Peoples' conduct was likely to be repeated; it also failed to show that it would escape review if repeated.[5]

There is also no great public interest in the resolution of this matter. There is no indication that the public is harmed by Peoples' practice of using employees of outside contractors to check meters. Indeed, the parties stipulated that Peoples subjected the outside contractor's employee to the same thorough background check to which it subjects its own employees and it provided the employee with adequate supervision at all times. Finally, there is no allegation of harm to Peoples or the Union if this case is not judicially resolved.

■ Even if we were to decide this case on the merits, we would affirm the Commission's order. The Commission is charged with interpreting, administering and enforcing the Public Utility Code. As such, the Commission's interpretation of the statutory provision and regulation at issue is "entitled to great deference and will not be reversed unless clearly erroneous." *City of Phila. v. Pub. Util. Comm'n*, 829 A.2d 1241, 1244 (Pa.Cmwlth.2003). In this case, the Commission's interpretation of the Code and regulation are not clearly erroneous; they are, in fact, well-reasoned, logical and consistent with the statutory language.

■ We agree with the Commission's conclusion that Peoples' practice of using outside contractors to read gas meters does not violate 66 Pa.C.S. § 2206(a). Section 2206(a) states that a natural gas distribution company shall be "responsible for" meter reading. The statutory language is clear and unambiguous; therefore, it must be given its plain meaning. Since the phrase "responsible for" is not defined in the Code, nor is it a term of art, it must be construed according to its com-

---

**5.** Of course, if in the future it were shown that Peoples repeatedly used employees of independent contractors to read meters, then hired them to avoid litigation, an exception to the mootness doctrine might exist, but no such pattern has been established on this record.

mon and approved usage. As the Commission noted:

> At all times, the utility is responsible for the quality of service and the conduct of its contractors as they perform this service. But that is not to say that a utility is prohibited from using contractors for this function. Therefore, a utility is not prohibited, as a matter of law, from using an outside contractor to perform meter reading services subject to the utility's ongoing responsibility and control.

Opinion at 6.

In support of its argument, the Union attempts to define "responsibility" narrowly, to mean legal liability for physical injury in the limited context of master-servant relationships. Suffice it to say that we see no basis for looking to tort law principles to impose such a restrictive interpretation on a term in the Public Utility Code rather than accepting the Commission's understanding of the term in accordance with its plain common sense meaning. As the ALJ and the Commission observed, the drafters of the Code could have used more specific and limiting language had they intended that only utility employees read gas meters.

■ We also agree with the Commission's conclusion that Peoples' use of outside contractors does not violate 52 Pa. Code § 56.12, which provides that "a utility shall render bills based on actual meter readings by utility company personnel." The Union challenges the Commission's conclusion that the word "personnel" is broad enough to encompass the employees of outside contractors. The Union claims that "employee" and "personnel" are syn-

onymous because they are used interchangeably in two other sections of the Commission's regulations. The Union claims that because the regulations "deal with the same class of persons or things," they must be deemed to be *in pari materia* and "construed together, if possible, as one." *See* Appellant's Brief at 15.

We disagree. The sections of the regulations cited by the Union are not *in pari materia* with Section 56.12.[6] The Commission's refusal to construe together regulations dealing with different subjects was not clearly erroneous. Consequently, this court will defer to its decision.

Additionally, the Commission's interpretation of its regulations must be consistent with the statute under which they were promulgated. *Highway News, Inc. v. Pa. Dep't of Transp.* 789 A.2d 802, 808 (Pa. Cmwlth.Ct.2002). The narrow reading of Section 56.12 urged by the Union would be inconsistent with the Commission's broad reading of Section 2206(a), with which we agree.

Based on the foregoing, the Union's petition is dismissed.

### *ORDER*

AND NOW, this 14th day of July, 2004, the petition for review of the Utility Workers Union of America, Local 69, AFL–CIO in the above captioned matter is hereby DISMISSED AS MOOT.

Judge PELLEGRINI concurs in the result only.

---

**6.** Section 56.12 describes the conditions the utility must satisfy to bill its customers. The sections cited by the Union are 52 Pa.Code §§ 53.53 and 57.107. Section 53.53 sets forth detailed filing requirements for a utility seeking a general rate increase involving more than $1 million. Section 57.107 contains guidelines for electric utilities engaged in major construction projects. Contrary to the Union's position, these sections deal with different subjects.