968 A.2d 1263

COMMONWEALTH of Pennsylvania, OFFICE OF ATTORNEY
GENERAL BY Thomas CORBETT, Jr., Attorney General,
Appellant

v.

LOCUST TOWNSHIP and Locust Township
Board of Supervisors, Appellees.

Commonwealth of Pennsylvania, Office of Attorney General
by Thomas Corbett, Jr., Attorney General, Appellee

v.

Locust Township and Locust Township Board
of Supervisors, Cross Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 2, 2008.

Decided April 29, 2009.

534

John G. Knorr, III, PA Office of Atty. Gen., Michael Thomas Killion, Harrisburg, for the Com. of PA.

Anthony Randall Sherr, Mayers, Mennies & Sherr, L.L.P., Blue Bell, for Locust Tp. and Locust Tp. Bd. of Supervisors.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERTY and GREENSPAN, JJ.

## OPINION

Justice BAER.

In June of 2006, the Attorney General brought an action in the original jurisdiction of the Commonwealth Court against Locust Township and the Locust Township Board of Supervisors (Township) pursuant to Chapter three of the Agricultural Code (ACRE), 3 Pa.C.S. § 311–318, which, effective July 6, 2005 in accordance with Act 38 of 2005, addresses local regulation of normal agricultural operations. The Attorney General sought to challenge the validity of the Township's Zoning Ordinance No. 4–2001 (Ordinance) on the grounds that it conflicts with and is preempted by a number of state statutes. In response to preliminary objections filed by the Township, the Commonwealth Court found that it had subject matter jurisdiction over the Attorney General's action, and granted the Township's preliminary objection asserting that there was no justiciable controversy ripe for adjudication. Consequently, the Commonwealth Court dismissed the Attor-

ney General's petition for review with prejudice. Both parties cross-appealed from the Commonwealth Court's order, which we affirm in part and reverse in part. We conclude that the Commonwealth Court properly overruled the Township's preliminary objection to the court's subject matter jurisdiction. However, we find that the Commonwealth Court erred in regard to the justiciability issue, and that the Attorney General's petition for review did, in fact, present a case and controversy ripe for adjudication in accord with the terms of ACRE.

The General Assembly enacted Chapter three of ACRE, 3 Pa.C.S. § 311–318, to ensure that local regulation of normal agricultural operations are consistent with Commonwealth policies and statutes.[1] Act 38 of 2005, July 6, P.L. 112, No. 38, preamble, *reprinted at* 3 Pa.C.S. § 311 (historical and statutory notes). To advance this purpose, Chapter three defines an unauthorized local ordinance as follows:

"Unauthorized local ordinance." An ordinance enacted or enforced by a local government unit which does any of the following:

(1) Prohibits or limits a normal agricultural operation unless the local government unit:

(i) has expressed or implied authority under State law to adopt the ordinance; and

(ii) is not prohibited or preempted under State law from adopting the ordinance.

(2) Restricts or limits the ownership structure of a normal agricultural operation.

1. Chapter three, 3 Pa.C.S. § 312, refers to the definition of "Normal agricultural operations," employed in section 2 of the act of June 10, 1982 (P.L. 454, No. 133). The definition provides as follows:
   "Normal agricultural operation." The activities, practices, equipment and procedures that farmers adopt, use or engage in the production and preparation for market of poultry, livestock and their products and in the production, harvesting and preparation for market or use of agricultural, agronomic, horticultural, silvicultural and aquacultural crops . . .
   3 P.S. § 952.

3 Pa.C.S. § 312. The statute prohibits local governments from adopting and enforcing unauthorized local ordinances in the following provision:

### § 313. Certain local government unit actions prohibited

(a) Adoption and enforcement of unauthorized local ordinances.-A local government unit shall not adopt nor enforce an unauthorized local ordinance.

(b) Existing local ordinances.-This chapter shall apply to the enforcement of local ordinances existing on the effective date of this section and to the enactment or enforcement of local ordinances enacted on or after the effective date of this section . . .

3 Pa.C.S. § 313. Section 314 of ACRE provides that certain individuals may request the Attorney General to review local ordinances and consider whether to bring legal action to challenge them, and the Attorney General may exercise discretion in deciding whether to bring such an action pursuant to Section 315:

### § 314. Duties of Attorney General

(a) Request for review.—An owner or operator of a normal agricultural operation may request the Attorney General to review a local ordinance believed to be an unauthorized local ordinance and to consider whether to bring legal action under section 315(a) (relating to right of action).

(b) Discretion.—The Attorney General has the discretion whether to bring an action under section 315(a).

(c) Response.—Within 120 days after receiving a request under subsection (a), the Attorney General shall advise the person that made the request whether or not the Attorney General will bring legal action under section 315(a). If the request under subsection (a) is in writing, the response shall be in writing.

(d) Consultation.—The secretary and the dean of the College of Agricultural Sciences at The Pennsylvania State University shall, upon request of the Attorney General,

provide expert consultation regarding the nature of normal agricultural operations in this Commonwealth.

3 Pa.C.S. § 314. Section 315(a), in turn, authorizes a right of action by the Attorney General:

### § 315. Right of action

(a) Attorney General action.—The Attorney General may bring an action against the local government unit in Commonwealth Court to invalidate the unauthorized local ordinance or enjoin the enforcement of the unauthorized local ordinance.

3 Pa.C.S. § 315(a).

When Chapter three became effective on July 6, 2005, Locust Township had in existence the Ordinance, which regulates intensive animal operations, defined as, *inter alia,* the keeping, housing, confining, raising, feeding, production or other maintaining of livestock or poultry animals when, on an annualized basis, there exists more than 150 "animal equivalent units" on the agricultural operation.[2] In October, 2005, pursuant to 3 Pa.C.S. § 314(a) (providing that an operator of a normal agricultural operation may request that the Attorney General review a local ordinance), an agricultural operator located in Locust Township, who evidently believed that his operation was in conformity with state law but potentially inconsistent with the Ordinance, requested that the Attorney General review the Ordinance and bring legal action against the Township to invalidate it. *See* 3 Pa.C.S. § 315(a) (authorizing the Attorney General to bring an action in the Commonwealth Court to invalidate an unauthorized local ordinance).[3]

---

**2.** The Ordinance occupies thirteen pages of the reproduced record (R.R.) and is thus too long to reprint here. It can be found at R.R. 20a–32a.

**3.** Subsection (b), not implicated in this case, provides that an operator aggrieved by an unauthorized local ordinance can bring his own action. 3 Pa.C.S. § 315(b) ("... any person who is aggrieved by the enactment or enforcement of an unauthorized local ordinance may bring an action against the local government unit in Commonwealth Court to invalidate the unauthorized local ordinance or enjoin the enforcement of the unauthorized local ordinance."). In the instant case, the operator opted to seek the Attorney General's intervention, rather than personally litigating this case.

In due course, the Attorney General filed a petition for review (Petition) in the Commonwealth Court seeking to have the court invalidate the provisions of the Ordinance which violate or are preempted by state law and thereby to enjoin the Township from attempting to enforce such challenged provisions. The Attorney General did not allege that the Township attempted to apply or enforce any part of the Ordinance.

·The Township responded by filing preliminary objections asserting that the court lacked subject matter jurisdiction because the Ordinance is a land-use provision governed by the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. §§ 10101–11202, which, the Township argued, vests exclusive jurisdiction over substantive challenges to land-use ordinances in the local zoning hearing board (ZHB), in accord with 53 P.S. § 10909.1(a)(1). *See Merlin v. Commonwealth,* 72 Pa.Cmwlth. 45, 455 A.2d 789 (1983). The Township further contended that to the extent ACRE vests the Commonwealth Court with jurisdiction to review land-use ordinances, such jurisdiction would be concurrent with the ZHB's jurisdiction, and the rules of statutory construction would require the court to decline jurisdiction because ACRE's grant of general jurisdiction conflicts with the particular and exclusive jurisdiction vested in the ZHB by the MPC.

The Township also asserted by preliminary objection that there was no justiciable case or controversy before the court because the petition failed to aver that the Township had applied or enforced the Ordinance in a manner inconsistent with state law, rendering the harm alleged by the petition purely speculative. According to the Township, pursuant to Section 313(b) of ACRE (stating that Chapter three applies to the enforcement of existing local ordinances), unless and until the Township attempts to enforce the Ordinance in a manner inconsistent with state law, ACRE does not authorize an action to challenge it.

The Commonwealth Court overruled the Township's preliminary objection, agreeing with the Attorney General that the MPC and ACRE do not conflict, and that this action was properly brought in the Commonwealth Court's original juris-

diction. *Commonwealth, Office of Attorney Gen. v. Locust Township,* 915 A.2d 738, 741 (Pa.Cmwlth.2007). The court found that the MPC provides for administrative appeals by landowners, *see* 53 P.S. § 10916.1, whereas ACRE applies to original actions by the Attorney General, *see* 3 Pa.C.S. § 315(a). *Id.* The court further noted that it has jurisdiction over all civil actions brought by the Commonwealth or an officer thereof, including the Attorney General. *Id.* (citing 42 Pa.C.S. § 761(a)(2)).

Addressing the Township's justiciability argument, the Commonwealth Court agreed with the Township. It reasoned that although Section 315(a) of ACRE authorizes the Attorney General to bring an action challenging an unauthorized local ordinance, Section 313(b) specifically addresses ACRE's application to ordinances that existed prior to its effective date, and states that in regard to such ordinances, ACRE permits the Attorney General to bring an action only where a municipality seeks to enforce an ordinance that is arguably inconsistent with state law. *Locust Township,* 915 A.2d at 742 (citing 3 Pa.C.S. § 313(b)). Because the Ordinance predated ACRE, the court concluded that the Attorney General must allege that the Township made an affirmative effort to require compliance with the Ordinance. *Id.* (citing *Commonwealth v. Lower Oxford Township,* 915 A.2d 685 (Pa.Cmwlth.2006), *aff'd per curiam* 594 Pa. 24, 934 A.2d 699). The court, therefore, distinguished between a pre-existing ordinance, which it held the Attorney General cannot challenge until the municipality attempts to enforce it, and those ordinances enacted after July 6, 2005 (the effective date of Chapter three), which the Attorney General can challenge immediately upon enactment, without waiting for the municipality to attempt enforcement. Thus, the court sustained the Township's preliminary objection and dismissed the Attorney General's petition with prejudice.

The parties cross-appealed to this Court. We must now address the two issues presented: First, whether the Commonwealth Court has subject matter jurisdiction to entertain the Attorney General's petition challenging an unauthorized

local land-use ordinance, or whether the MPC vests exclusive jurisdiction in the local ZHB to hear such challenges. Second, whether the Attorney General's petition for review presents a justiciable cause of action under ACRE.

■■■ Our scope and standard of review with regard to questions of subject matter jurisdiction are well settled:[4]

Jurisdiction over the subject matter is conferred solely by the Constitution and laws of the Commonwealth. The test for whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs. Thus, as a pure question of law, the standard of review in determining whether a court has subject matter jurisdiction is de novo and the scope of review is plenary. Whether a court has subject matter jurisdiction over an action is a fundamental issue of law which may be raised at any time in the course of the proceedings, including by a reviewing court sua sponte.

*Mazur v. Trinity Area School Dist.*, 961 A.2d 96, 101 (Pa.2008) (citing *In re Administrative Order No. 1–MD–2003; Appeal of Troutman*, 594 Pa. 346, 936 A.2d 1, 5 (2007)). Our scope and standard of review of an order sustaining a demurrer are similarly well-settled.[5] The Court must determine whether it is clear and free from doubt, from all the facts pleaded, that the appellant will be unable to state a cause of action. *Ciamaichelo v. Ind. Blue Cross*, 589 Pa. 415, 909 A.2d 1211, 1216 n. 7 (2006). This raises questions of law as to which our standard of review is de novo. *Id.* On preliminary objections, all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of review. *Id.*

We will first address the Township's appeal, in which it argues that the Commonwealth Court lacked subject matter

4. The Township's appeal is from the Commonwealth Court's order overruling their preliminary objection based on a lack of jurisdiction.

5. The Attorney General is appealing the Commonwealth Court order sustaining the Township's preliminary objection in the nature of a demurrer based on the absence of a case or controversy.

jurisdiction to hear the Attorney General's petition because challenges to local land-use ordinances by landowners are governed exclusively by the MPC, 53 P.S. §§ 10901–10918. Specifically, the Township argues that a landowner substantively challenging the validity of a land-use ordinance has to bring his challenge before the ZHB:

§ 10916.1. Validity of ordinance; substantive questions

(a) A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge either:

(1) to the zoning hearing board under section 909.1(a); or

(2) to the governing body under section 909.1(b)(4), together with a request for a curative amendment under section 609.1.

(b) Persons aggrieved by a use or development permitted on the land of another by an ordinance or map, or any provision thereof, who desires to challenge its validity on substantive grounds shall first submit their challenge to the zoning hearing board for a decision thereon under section 909.1(a)(1).

53 P.S. § 10916.1. Further, the Township asserts that the Ordinance in question is an amendment to the Zoning Ordinance of Locust Township regarding intensive animal agriculture, and in regard to substantive challenges to zoning ordinances, the MPC provides exclusive jurisdiction to the ZHB:

§ 10909.1. Jurisdiction

(a) The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:

(1) Substantive challenges to the validity of any land use ordinance, except those brought before the governing body pursuant to sections 609.1 and 916.1(a)(2).

53 P.S. § 10909.1(a)(1). Therefore, according to the Township, because the Attorney General brought this action at the request of a local landowner to challenge a local zoning

ordinance, the Attorney General stands in the shoes of that landowner and must challenge the Ordinance exclusively before the local ZHB. *See Unger v. Hampton Township,* 437 Pa. 399, 263 A.2d 385 (1970) (ruling that the exclusive jurisdiction of the MPC prevented a landowner from compelling the issuance of a building permit by challenging the substantive validity of a zoning ordinance in a mandamus action before the Commonwealth Court). Because the Attorney General did not first challenge the Ordinance before the ZHB, the Township asserts that judicial review is precluded and that the Attorney General's petition for review should be dismissed.

The Township further disputes that ACRE provides a basis for the Commonwealth Court's jurisdiction. The Township focuses on the language of Section 315(a), which directs that the Attorney General may, in its discretion, bring an action in the Commonwealth Court to invalidate an unauthorized local ordinance. 3 Pa.C.S. § 315(a). Chapter three does not, according to the Township, mandate action, does not confer exclusive jurisdiction in the Commonwealth Court, and does not specifically address land-use ordinances or include such ordinances within the definition of "unauthorized local ordinances." 3 Pa.C.S. § 312 (defining an unauthorized local ordinance as one that prohibits or limits a normal agricultural operation unless the local government unit has expressed or implied authority to adopt the ordinance and is not prohibited or preempted from adopting the ordinance, or restricts or limits the ownership structure of a normal agricultural operation). The Township suggests that those challenges to unauthorized local ordinances that do not involve local zoning ordinances may be challenged in the Commonwealth Court pursuant to ACRE, while challenges to unauthorized local ordinances that implicate local zoning ordinances must be brought before the ZHB. Leaving exclusive jurisdiction over land-use challenges with the ZHB while allowing the Attorney General to pursue actions concerning non-zoning ordinances in the Commonwealth Court, according to the Township, gives effect to both the specific provision of the MPC and the general provision of Chapter three.

The Attorney General responds that the MPC applies to actions brought by land owners. *See* 53 P.S. § 10916.1(a), (b). Here, although the action was the result of a request by a local farmer, the Attorney General asserts that it brought the action in its own right to vindicate the General Assembly's authority to limit local regulation of agriculture. Further, the Attorney General relies on the language in ACRE explicitly authorizing it to bring this action. 3 Pa.C.S. §§ 314, 315.

■ We believe the Attorney General is correct. According to the language of the MPC, the ZHB is authorized to entertain administrative appeals by landowners to substantive challenges to land-use regulations. 53 P.S. § 10916.1 (stating that only a landowner or a person aggrieved may challenge the validity of a land-use ordinance on substantive grounds). The Township does not argue that the Attorney General is a landowner for purposes of the MPC. Rather, the Township asserts that the Attorney General is aggrieved (and thus required to bring this action before the ZHB) because it is acting in the stead of a local property owner. This position misconstrues the nature of the Attorney General's action. Although Section 314(a) of ACRE provides that a farmer may request the Attorney General to review a local ordinance, such review is not a necessary prerequisite to the Attorney General's action. If the Attorney General decides to exercise its discretion and mount a challenge to an ordinance in the Commonwealth Court, it is not acting on behalf of the landowner; rather, it is acting in its own right, as the official charged with administering the program established by Chapter three, in order to defend and maintain the Commonwealth's interest in limiting local regulation of agriculture. Because the Attorney General is not a landowner or a person aggrieved by the Township's ordinance, it fits into neither category provided by the MPC in 53 P.S. § 10916.1, and, therefore could not have brought this action before the ZHB.

■ Chapter three, on the other hand, provides explicitly that the "Attorney General may bring an action ... in the Commonwealth Court ... to enjoin the enforcement of the

unauthorized local ordinance." 3 Pa.C.S. § 315(a). This provision comports with the general structure of the Commonwealth Court's jurisdiction. *See* 42 Pa.C.S. § 761(a)(2) (providing the Commonwealth Court with original jurisdiction over "all civil actions or proceedings: By the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings."). Moreover, the Judicial Code vests the Commonwealth Court with original jurisdiction where such jurisdiction is conferred by any statute, 42 Pa.C.S. § 761(a)(4) ("The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings: Original jurisdiction of which is vested in the Commonwealth Court by any statute hereafter enacted."). Here, as the Commonwealth Court found, the Attorney General "acting in his official capacity, is bringing a civil action against the Township in Commonwealth Court asserting that certain parts of the Ordinance are invalid as 'unauthorized local ordinances.'" 915 A.2d at 742. Accordingly, the Attorney General's action pursuant to ACRE does not conflict with the MPC, and the Commonwealth Court has subject matter jurisdiction over the challenge to the Ordinance pursuant to ACRE and the Judicial Code.[6]

■ Having found that jurisdiction lies with the Commonwealth Court to consider a challenge to the Ordinance, we will now examine the merits of the Attorney General's cross-appeal, which questions whether the Commonwealth Court erred in holding that an ordinance that pre-dates the effective date of ACRE cannot be challenged before a local municipality attempts to enforce it. The Attorney General advances two related arguments: first asserting that it is specifically authorized by ACRE to challenge an unauthorized local ordi-

6. We also reject the Township's invitation to read ACRE as solely authorizing Commonwealth Court jurisdiction over challenges to ordinances that are not land-use ordinances, which Township asserts are within the exclusive jurisdiction of the ZHB. Because ACRE is principally concerned with local ordinances that regulate agricultural operations, which frequently address the use of land, the Township's argument would effectively drain Chapter three and leave it an empty vessel with no practical applicability.

nance without having to wait until it is enforced, and, second, arguing that pre-enforcement actions generally are permitted.

Regarding the specific language of ACRE, the Attorney General argues that Chapter three authorizes it to challenge a local ordinance that arguably illegally regulates agriculture, regardless of whether there has been an affirmative effort by the Township to enforce the ordinance. Specifically relying on Section 315(a), the Attorney General notes that it is authorized to "bring an action against the local government unit ... to invalidate the unauthorized local ordinance or enjoin the enforcement of the unauthorized local ordinance." 3 Pa.C.S. § 315(a). Because the Attorney General is specifically empowered by this section to bring an action to invalidate an unauthorized local ordinance, and because neither Section 314 (describing the duties of the Attorney General) nor 315 (authorizing a right of action) require the Attorney General to wait for an attempt at enforcement before bringing an action, the Attorney General asserts that its petition for review in the Commonwealth Court was ripe without regard to the lack of enforcement. According to the Attorney General, the distinction drawn by the Commonwealth Court between ordinances adopted on or after the effective date of ACRE, which the court held could be challenged immediately, and those that already existed on that date, which the court held could only be challenged after enforcement, lacks support in the language and structure of Chapter three of ACRE, and would frustrate Chapter three's purpose of streamlining the process of resolving challenges to local ordinances. *See* 3 Pa.C.S. § 311 ("Historical and Statutory Notes").

The Attorney General also argues generally that an individual who has standing to challenge the validity of a regulatory scheme need not wait until an attempt is made to enforce it, but may bring a pre-enforcement challenge. *See Arsenal Coal Co. v. Dept. of Envtl. Res.*, 505 Pa. 198, 477 A.2d 1333, 1338 (1984). *See also Hydropress Env. Serv., Inc. v. Township of Upper Mount Bethel*, 575 Pa. 479, 836 A.2d 912 (2003); *Machipongo Land and Coal Co. v. Dept. of Envtl. Res.*, 538 Pa. 361, 648 A.2d 767 (1994); *Brocal Corp. v. Dept. of Transp.*, 515

Pa. 224, 528 A.2d 114 (1987). For example, in *Arsenal Coal,* the Attorney General avers, and this Court found, that in the absence of pre-enforcement actions, the subject of a regulatory scheme has only two unsatisfactory alternatives: (1) the subject can submit to the regulations and incur the cost and burden which the regulations will inevitably impose; or (2) the subject can refuse to comply and defend itself in actions imposing sanctions for non-compliance. The Attorney General asserts that this case falls squarely within the paradigm described by *Arsenal Coal,* and there is nothing in Chapter three of ACRE that indicates that the General Assembly intended to change the long-standing law which allows pre-enforcement actions or to impose upon the Attorney General a uniquely truncated version of standing.

While the Attorney General focuses on the language empowering its office in Section 315(a) ("Right of action"), the Township looks at the language prohibiting local government action in Section 313 ("Certain local government unit actions prohibited"). Specifically focusing on Section 313(b) of ACRE, the Township argues that in regard to preexisting ordinances (ordinances already existing at the time of Chapter three's effective date), Chapter three is only applicable when there is an attempt at enforcement. According to the Township, Section 313(b) expressly limits the application of all of Chapter three, including the section authorizing the Attorney General to act, 3 Pa.C.S. § 315, to the "enforcement of local ordinances existing on the effective date of this section." 3 Pa.C.S. § 313(b). Because the Ordinance already existed on the effective date of Chapter three, the Township argues that the Attorney General must wait until the Township attempts to enforce the Ordinance before challenging it. Until the Ordinance is applied or enforced in a manner inconsistent with state law, the Township insists that the matter is not ripe and the Commonwealth Court properly dismissed the Attorney General's challenge. In this regard, the Township relies on *Gardner v. Commonwealth Dept. of Envtl. Res.,* 658 A.2d 440, 444 (Pa.Cmwlth.1995), in which the court held that justiciability requires courts to review government actions only when the

government's position has crystallized to the point at which a court can identify a relatively discreet dispute, which the Township asserts cannot occur before enforcement. The Township also argues generally that a case or controversy must exist, and if it does not, the case is moot and should not be decided. *See Util. Workers Union of Am., Local 69, AFL–CIO v. PUC,* 859 A.2d 847, 850 (Pa.Cmwlth.2004); *Musheno v. Dep't of Pub. Welfare,* 829 A.2d 1228 (Pa.Cmwlth.2003).

The Township also contends that the case law cited by the Attorney General regarding pre-enforcement challenges is inapplicable here because those cases explicitly limit a party's ability to bring such challenges to those circumstances where the challenger has a direct and immediate interest, citing *Arsenal Coal,* 477 A.2d at 1339; *Hydropress,* 575 Pa. 479, 836 A.2d 912; *Brocal,* 515 Pa. 224, 528 A.2d 114. Here, the Township argues the Attorney General has no direct and immediate interest in the validity of the Ordinance, apart from that interest shared by all citizens, and therefore is not entitled to bring a pre-enforcement action.

■ To determine whether the Commonwealth Court was correct that ACRE requires the Attorney General to wait until the Township attempts to enforce an unauthorized local ordinance existing at the time of Chapter three's effective date before challenging it, we must engage in statutory construction of several provisions of Chapter three. Our inquiry is guided by the Statutory Construction Act, which instructs us that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly," and that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). Further, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). A court should resort to other considerations, such as the General Assembly's purpose in enacting a statute, only when the words of a statute are not explicit. 1 Pa.C.S. § 1921(c); *In re James,* 596 Pa. 442, 944 A.2d 69, 72 (2008).

Reviewing the plain language of Chapter three, we believe that the statute is unambiguous with regard to when the Attorney General may bring an action to challenge an unauthorized local ordinance. In particular, the manner in which the chapter is divided into sections indicates that the General Assembly intended to regulate the conduct of local governments in Section 313 ("Certain local government unit actions prohibited"), and to define the authority of the Attorney General in Sections 314 ("Duties of Attorney General") and 315 ("Right of Action").[7] Section 313, which specifically constrains the actions of local governments by articulating which local government conduct is prohibited, states that local governments may not adopt or enforce an unauthorized local ordinance, 3 Pa.C.S. § 313(a), and that Chapter three applies to the enforcement of preexisting local ordinances and to the enactment or enforcement of subsequently enacted local ordinances, 3 Pa.C.S. § 313(b). This distinction in subsection (b) between preexisting and subsequently enacted ordinances is simply a common sense recognition that local townships cannot be prevented from enacting existing ordinances, as this conduct has already occurred, and it would be futile to prohibit the enactment of ordinances which in fact have already been enacted. Therefore, Chapter three regulates the future conduct of local townships by preventing them from enforcing already enacted ordinances because the statute cannot reach back in time to prevent local governments from enacting such ordinances.

Section 313 must be read in conjunction with the rest of Chapter three. Unlike Section 313, which constrains the actions of local governments, Sections 314 ("Duties of Attorney General") and 315 ("Right of Action") are directed at authorizing the Attorney General to act. Section 314(a) provides that an owner or operator of a normal agricultural operation may request the Attorney General to review "a local ordinance believed to be an unauthorized local ordinance." 3

7. Although our rules of statutory construction deny statutory headings dispositive effect, they note that headings "may be used to aid in the construction" of the sections they describe. 1 Pa.C.S. § 1924; *Pinto v. State Civil Serv. Comm'n*, 590 Pa. 311, 912 A.2d 787, 795 (2006).

Pa.C.S. § 314(a). The definition of "unauthorized local ordinance" provided by the statute encompasses both ordinances that are "enacted" and those that are "enforced." 3 Pa.C.S. § 312 ("Definitions"). Utilizing this definition, Section 314(a) authorizes certain individuals to request the Attorney General to review an ordinance that has already been enacted. There is nothing in Section 314(a) that indicates that the local owner or operator of a normal agricultural operation has to wait for the municipality to attempt to enforce the ordinance. Rather, Section 314(b) vests discretion with the Attorney General to decide whether to bring an action under Section 315(a) once such a request has been made, without limiting the Attorney General's discretion in terms of whether the local government has attempted to enforce the ordinance. When the Attorney General exercises its discretion and decides to bring an action according to Section 314(b), it is done pursuant to Section 315.

Section 315, entitled "Right of Action," explicitly permits the Attorney General to bring an action to invalidate an unauthorized local ordinance, defined in part as an ordinance already enacted, 3 Pa.C.S. § 312, without requiring the Attorney General to wait until the ordinance is enforced. 3 Pa.C.S. § 315(a) ("The Attorney General may bring an action against the local government unit in Commonwealth Court to invalidate the unauthorized local ordinance or enjoin the enforcement of the unauthorized local ordinance."). This right of action contemplates two scenarios: first, an action to invalidate the unauthorized local ordinance, and, second, an action to enjoin the enforcement of the unauthorized local ordinance. The Attorney General is not constrained in any way to seek invalidation only of unauthorized local ordinances which are newly adopted or enforced; to the contrary, the Attorney General is explicitly empowered to invalidate enacted local ordinances without regard to enforcement.

Thus, Section 313 of Chapter three logically regulates the future conduct of townships, as it cannot constrain conduct that has already occurred, by prohibiting local governments from enforcing unauthorized ordinances that have already been enacted, and from enacting further unauthorized local

ordinances. 3 Pa.C.S. § 313. In contrast, both the "Duties of Attorney General" prescribed by Section 314 and the "Right of Action" by the Attorney General prescribed by Section 315 allow the Attorney General to challenge an unauthorized local ordinance without regard to whether the Township has attempted to enforce it. To apply the statute as the Township urges would prohibit the Attorney General from acting in accord with Sections 314 and 315 based on the prohibitions in Section 313 of certain local government conduct. This construct would fail to give full effect to all of the provisions of Chapter three in violation of the Statutory Construction Act, 1 Pa.C.S. § 1921(a). In contrast, by reading Section 313 as applying to local government actions, and Sections 314 and 315 as empowering the Attorney General, we give effect to each section of Chapter three.[8]

Moreover, as the Attorney General notes, we have generally permitted pre-enforcement challenges to government regulation to proceed on behalf of affected persons. *See Arsenal Coal Co.*, 477 A.2d at 1338. Chapter three of ACRE effectively empowers the Attorney General to act in its official capacity in the stead of such affected persons relative to unauthorized local ordinances regulating agriculture, given the Commonwealth's "vested and sincere interest" in ensuring the "long term sustainability of agriculture and normal agricultural operations." 3 Pa.C.S. § 311 (historical and statutory notes). Notably, the Act specifically authorizes the Attorney General to act at the behest of an affected person, an owner or

---

8. The dissent argues that Section 313(b) restrains the right of the Attorney General to bring an action to invalidate an unauthorized local ordinance beyond the language specifically directed to the Attorney General in Sections 314 and 315. Respectfully, by focusing exclusively on Section 313(b), the dissent ignores the plain language of Sections 314 and 315, and fails to give full effect to all provisions of Chapter three. Further, the dissent asserts that if the General Assembly wanted the Attorney General to challenge unauthorized local ordinances predating Chapter three that have not been enforced, it would have said so. The General Assembly did, in fact, specifically empower the Attorney General to invalidate preexisting ordinances absent enforcement. In Section 315(a), the General Assembly vested discretion in the Attorney General to bring an action to invalidate an "unauthorized local ordinance," which is defined as an ordinance that has been enacted without a requirement that it also be enforced.

operator of a normal agricultural operation, 3 Pa.C.S. § 314(a), thereby reflecting a legislative judgment to shift to the Attorney General and away from the affected land-owner the cost and burden of challenging and invalidating an unauthorized local ordinance.[9]   We therefore agree with the Attorney General that the Commonwealth Court erred in requiring it to wait for the Township to attempt to enforce the Ordinance before the Attorney General could challenge it in the Commonwealth Court.

Finally, as noted, in this case the Commonwealth Court relied on its substantially contemporaneous decision in *Lower Oxford*, 915 A.2d at 685, which was affirmed by a majority of this Court in a divided, *per curiam* order, over a dissent supported by this author and two other Justices. *See Commonwealth v. Heidelberg Twp.*, 594 Pa. 24, 934 A.2d 699 (2007). Because, however, the *Heidelberg Township* majority chose not to supply its reasons supporting the decision to affirm, the order does not bind us here. *See Commonwealth v. Smith*, 575 Pa. 203, 836 A.2d 5, 17 (2003); *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898, 903–05 (1996).

9.  The dissent postulates a policy supporting a restriction on the Attorney General's right of action with regard to preexisting ordinances that the local municipality does not attempt to enforce. Specifically, the dissent asserts that it would be a waste of money to litigate the validity of ordinances that a municipality has no intention of enforcing. Respectfully, this position would frustrate the Act's purpose by relegating to local farmers the same unsatisfactory alternatives described in *Arsenal Coal:* the farmer could either absorb the cost of complying with the local ordinance, which the farmer believes to be invalid, or refuse to comply and take his chances with the "penalties and impediments" which follow. *Arsenal Coal*, 477 A.2d at 1340. If the farmer chooses the later course, and if the municipality chooses to bring an enforcement action, only then may the Attorney General choose to act. This would lead to parallel proceedings, one against the farmer and another against the municipality. Such a result would frustrate Act 38's purpose of streamlining the process for resolving conflicts between state law and local ordinances by adding an additional layer of litigation onto a mechanism the legislature thought was already too cumbersome and expensive. *See* 3 Pa.C.S. § 311 (providing, in "historical and statutory notes," that the intent of Act 38 is to reduce the costs associated with determining whether a local ordinance complies with the Commonwealth's existing statutes by utilizing current State resources and mechanisms and to provide for a prompt and fair resolution to the conflict).

We affirm the Commonwealth Court order inasmuch as it overruled the Township's preliminary objection to the Commonwealth Court's subject matter jurisdiction. We reverse the order of the Commonwealth Court to the extent that it dismissed the Attorney General's petition for review and granted the Township's preliminary objection that there is no ripe case or controversy, and remand for further proceedings.

Justices SAYLOR, EAKIN, TODD and McCAFFERY join the opinion.

Justice GREENSPAN files a concurring and dissenting opinion in which Chief Justice CASTILLE joins.

Justice GREENSPAN, concurring and dissenting.

I join in the first part of the Majority Opinion authored by Justice Baer, which holds that the Commonwealth Court has jurisdiction over the Attorney General's (AG's) action against Locust Township and the Locust Township Board of Supervisors (Locust Township) under 3 Pa.C.S. § 315(a) and 42 Pa.C.S. § 761(a)(4). Respectfully, I dissent from the second part of the Majority Opinion and the result. In the second part of the opinion, the Majority holds that the AG's action was ripe, reverses the order of the Commonwealth Court, and remands the case for resolution on the merits. As explained herein, I would hold that where the unauthorized ordinance predates the adoption of Chapter 3 of the Agriculture Code, Section 313 of the Code confers the AG standing to challenge such an ordinance only where the township seeks to enforce it. Accordingly, I would affirm the judgment of the Commonwealth Court in its entirety.

The crux of the question before us is not whether the AG's action is ripe but whether the AG has standing to challenge Locust Township's ordinance. Generally, "to have standing to challenge an official order or action, a party must be aggrieved by the action or order." *In re Administrative Order No. 1–MD–2003; Appeal of Troutman*, 594 Pa. 346, 936 A.2d 1, 7–8 (2007). In the alternative, the General Assembly can create a

cause of action and standing for a party, like the AG here, by legislative fiat. 3 Pa.C.S. § 315.

To be aggrieved under general justiciability principles, a party must show, *inter alia*, that it has a present interest in the litigation. *Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 888 A.2d 655, 659–60 (2005). This Court has held that a party has standing "[w]here the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement." *Arsenal Coal Co. v. Commonwealth*, 505 Pa. 198, 477 A.2d 1333, 1339 (1984). In *Arsenal Coal*, a coal company sued the Commonwealth's Department of Environmental Protection in order to enjoin the department's regulations before they were enforced. *Id.* at 1339–40. This Court held that the plaintiff had standing under general principles of standing, i.e. the plaintiff was an aggrieved party. *Id.*

Here, however, the AG filed its action under Chapter 3 and does not argue that it is an aggrieved party with standing under general principles of justiciability. As a result, common law principles regarding standing and ripeness are not applicable here. Instead, this Court must look only to the language of the statute conferring standing (Chapter 3 of the Agriculture Code) to determine whether the AG has standing to sue Locust Township.

Chapter 3 of the Agriculture Code addresses the local regulation of normal agricultural operations via "unauthorized local ordinances." 3 Pa.C.S. §§ 311, 312. Section 312 defines the types of local ordinances that are "unauthorized" while Section 313 of Chapter 3 describes what *types* of local *actions* are subject to challenge under the chapter. 3 Pa.C.S. §§ 312, 313.

Sections 314 through 316 provide the procedure for challenging "unauthorized" local ordinances. 3 Pa.C.S. §§ 314–316. Specifically, Chapter 3 places a duty on the AG to investigate local ordinances referred by local farmers and believed to be unauthorized and, more importantly, creates

standing for the AG to sue local governments in order to invalidate or enjoin the enforcement of unauthorized local ordinances. 3 Pa.C.S. §§ 314, 315. The remaining sections of Chapter 3 provide for the appointment of masters by the Commonwealth Court, the payment of legal fees, and reports to the General Assembly. 3 Pa.C.S. §§ 316–318.

According to Section 313(b), the Chapter 3 procedure applies "to the enforcement of local ordinances existing on the effective date of this section and to the enactment or enforcement of local ordinances enacted on or after the effective date of this section." 3 Pa.C.S. § 313(b). In other words, where an unauthorized ordinance predates the enactment of Chapter 3, the AG may proceed under Chapter 3 only if the local government is *enforcing* the unauthorized ordinance. 3 Pa. C.S. § 313(b). Here, Locust Township adopted its unauthorized ordinance before the effective date of Chapter 3 and did not seek to enforce it. According to the plain language of Chapter 3, the AG does not have standing to challenge Locust Township's ordinance. 3 Pa.C.S. § 313(b).

Respectfully, I believe that the Majority ignores the unambiguous language of the statute "under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). The Majority appears to rely heavily on section headings for disposition, contrary to well-established rules of statutory construction. 1 Pa.C.S. § 1924. Thus, the Majority argues that Section 313 simply restrains the actions of local government while Sections 314 and 315 empower the AG to investigate the actions of the local government and bring legal action. On this basis, the Majority holds that the language of Section 313 is not binding in the interpretation of Sections 314 and 315. In my opinion, this holding distorts not only the purpose of Chapter 3 (to create a procedure for challenging well-defined local ordinances) but also the language of Section 313, which, to reiterate, states:

> *This chapter shall apply* to the enforcement of local ordinances existing on the effective date of this section and to the enactment or enforcement of local ordinances enacted on or after the effective date of this section.

3 Pa.C.S. § 313(b) (emphasis added). In other words, the procedure described in Sections 314 through 318 is available only in the circumstances defined in Section 313(b). The Majority, however, reads Chapter 3 too broadly to create standing for the AG in circumstances other than those described with particularity by the General Assembly. Respectfully, I believe that if the General Assembly had intended to allow the AG to challenge unauthorized local ordinances predating the adoption of Chapter 3 that local governments do not try to enforce, the General Assembly would have said so. Instead, the General Assembly gave the AG power to act only when a local government *seeks to enforce* a local ordinance predating the enactment of Chapter 3.

The Majority's interpretation of Chapter 3 also leads to an untenable position. The Majority agrees that a municipality is prohibited only from enforcing an unauthorized ordinance predating Chapter 3. However, the Majority would nonetheless allow the AG to challenge not only this prohibited enforcement *but also the mere existence on the ledgers* of an unauthorized ordinance predating Chapter 3. In other words, the Majority would allow the AG to sue a township that is not engaging in an act prohibited by Chapter 3.

I recognize several policy reasons that support the General Assembly's limited grant of standing to the AG to interfere with local government, including preservation of the Commonwealth's resources and judicial economy. Specifically, it would be a waste of taxpayer money for the AG to prosecute cases merely to strike off local ledgers ordinances that townships do not and never intend to enforce. The General Assembly clearly did not intend to create incentives for the AG to seek out townships with unauthorized local ordinances predating the effective date of Title 3 and sue them. *See* 3 Pa.C.S. § 314(a). The fact that only a limited number of individuals may refer "unauthorized local ordinance" cases to the AG for investigation illustrates this policy choice. Only "[a]n owner or operator of a normal agricultural operation may request the Attorney General to review a local ordinance believed to be an unauthorized local ordinance." 3 Pa.C.S. § 314(a). Finally, a

broader interpretation of the AG's powers contravenes this Commonwealth's general policy of limited interference with the legislative actions of local government.[1] *See Mazur v. Trinity Area School Dist.*, 961 A.2d 96, 105 (Pa.2008).

For these reasons, I respectfully dissent.

Chief Justice CASTILLE joins in this opinion.

1.  Respectfully, this Court's decision in *Arsenal Coal* is inapposite. Under *Arsenal Coal*, a Locust Township farmer would be able to challenge Locust Township's unauthorized local ordinance and obtain an injunction. *Arsenal Coal*, 477 A.2d at 1339; 3 Pa.C.S. § 315(b). According to that decision, even an ordinance that is not enforced may present an *immediate* harm to a party that is *directly* injured. *Arsenal Coal*, 477 A.2d at 1339. Here, however, we have a different procedural posture. Here, the AG does not claim that he is facing a direct or immediate harm. Thus, unlike in *Arsenal Coal*, the question before us does not require the Court to interpret what constitutes "immediate" harm under general standing principles. Instead, the question before us is simply whether the General Assembly, in creating standing for the AG by legislative fiat, intended the AG to be able to challenge unauthorized local ordinances predating Chapter 3 that the adopting municipality does not seek to enforce. For this reason, any reliance on this Court's previous decisions regarding common law standing principles is misplaced. Here, we address standing derived solely from a Pennsylvania statute.