## SILOAM

v.

## CITY OF PHILADELPHIA, BOARD OF LICENSE AND INSPECTION REVIEW.

### Appeal of: Callowhill Neighborhood Association.

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2013.

Decided Nov. 15, 2013.

Samuel C. Stretton, West Chester, for appellant.

Andrew S. Ross, Chief Deputy City Solicitor, for appellee City of Philadelphia.

BEFORE: BROBSON, Judge, McCULLOUGH, Judge (P.), and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Callowhill Neighborhood Association (CNA) appeals from the October 1, 2012, order of the Court of Common Pleas of Philadelphia County (trial court) that reversed the decision of the Board of License and Inspection Review (Board) of the City of Philadelphia (City) and reinstated the decision of the Philadelphia Historical Commission (Commission) granting Siloam a permit to demolish a historic church (Church). The City opposes CNA's appeal. Because Siloam sold the Church while Siloam's appeal was pending before the trial court and the new owner did not intervene, we conclude that the matter before the trial court was moot. Therefore, we vacate the trial court's order and remand the case to the trial court to dismiss Siloam's appeal without prejudice to the new owner to seek a demolition permit.

The Church is located at 1123–33 Spring Garden Street in the City. (Board's Findings of Fact, No. 26.) The Church has been vacant, unused, unheated, and unmaintained since it was closed as a place of worship in 1995. (*Id.*, No. 28.) Siloam is a non-denominational provider of services to individuals impacted by HIV/AIDS. (*Id.*, No. 10.) Between 1996 and 2006, Siloam rented a rectory adjacent to the Church from the Archdiocese of Philadelphia (Archdiocese). (*Id.*, No. 12.) In 2006, the Archdiocese offered to sell Siloam the rectory but conditioned the sale on Siloam's purchase of the entire Archdiocese property, including five tax parcels comprising the Church building, a convent building, the rectory, a storefront, and a parking area. Siloam purchased the entire proper-

ty for $800,000 on March 15, 2006. (*Id.*, No. 14.)

In 2009, while Siloam was seeking a permit to demolish the Church, the Commission designated the Church as a historic building. (*Id.*, Nos. 3–4.) On July 8, 2009, the City's Department of Licenses and Inspections issued a citation to Siloam because the Church's walls and roof were "deteriorated and in danger of collapse." (*Id.*, No. 31.) Siloam submitted an application to the Commission on August 10, 2010, seeking a permit to completely demolish the Church on the basis of financial hardship. (*Id.*, Nos. 1, 3–5, 10, 12–15, 28.)

Following consideration by the Commission's Architectural Committee and Financial Hardship Committee, both of which approved the application, the full Commission considered the application at a general meeting on September 10, 2010. (*Id.*, Nos. 6–7.) According to the Commission's minutes,[1] Siloam introduced the testimony of: Siloam's executive director, Joseph Lukach, who testified regarding Siloam's history with the Church, attempts to find uses for the Church, and attempts to sell the Church; realtors Michael Barmash and James Scott, who testified regarding their attempts to sell the Church on behalf of Siloam; structural engineer Bevan Lawson, who testified regarding the condition of the Church; and construction cost estimator John Frondorf, who testified regarding the costs to rehabilitate the Church. A number of individuals also spoke in favor of Siloam's mission and the work it does in the community. The following individuals spoke against the permit: Andrew Palewski, who nominated the Church for designation as a historic building; Amy Hooper, president of CNA; David Traub, an architect; and John Gallery, representing the Preservation Alliance, who testified regarding weaknesses in Siloam's attempts to sell the Church.

The Commission voted six to five in favor of granting the permit to demolish the Church. The Commission issued a letter to Siloam informing it of the steps necessary to complete its application on September 10, 2010. CNA appealed to the Board.

The Board held three hearings. Many of the same witnesses who testified before the Commission testified before the Board and offered substantially similar testimony as that recorded in the Commission's minutes. One notable addition was Alexander Generalis, a real estate broker who testified on behalf of CNA and criticized Siloam's efforts to sell the Church as inadequate.

The Board issued a decision holding that the Commission erred in sustaining CNA's appeal. The Board determined that Siloam did not meet the criteria for financial hardship necessary for a demolition permit because Siloam's attempts to sell the Church were inadequate and it had not shown that other potential uses of the Church were foreclosed. (Board's Conclusions of Law, Nos. 10–11.) The Board held that Siloam's attempts to sell the Church were inadequate because: (1) Siloam had not marketed the Church broadly enough; (2) Siloam did not market the Church for a sufficient length of time; (3) Siloam's asking price for the Church was unrealistic; (4) Siloam failed to subdivide the Church from the rest of the property prior to offering it for sale; and (5) Siloam's proposed subdivision lines made the Church less attractive. (*Id.*, No. 12.) The Board concluded that Siloam failed to show that other potential uses of the Church were foreclosed because: (1) Siloam failed to show that it identified the most likely potential reuses of the Church; and (2) Siloam failed to show that it reasonably assessed the costs and returns of possible

1. The Commission does not make transcripts    of its meetings.

reuses. (*Id.*, No. 13.) In reaching these holdings, the Board credited the opinions of Gallery and Generalis, particularly their criticisms of Siloam's attempts to sell the Church. (Board's Findings of Fact, Nos. 76–78.) Siloam appealed the Board's decision to the trial court.

While the appeal was pending before the trial court, CNA notified the trial court in a letter dated July 18, 2012, that Siloam sold the entire site, including the Church, to a new owner. (R.R. at A–131–131 "A.") The new owner did not seek to intervene before the trial court.

In an order filed October 1, 2012, the trial court granted CNA's appeal and reversed the Board. The trial court reinstated the Commission's decision to grant Siloam's permit to demolish the Church.

The trial court held that the Board's findings that the rental or sale of the Church was impracticable and that other potential uses were not feasible were not supported by substantial evidence. (Trial Ct. Op. at 5.) The trial court also held that the Board's conclusion that the evidence before it was insufficient to meet the standard for financial hardship was in error. (*Id.*) The trial court stated that uncontradicted evidence showed that Siloam had listed the Church with a commercial realtor who had used several methods to market the Church but that potential buyers had been deterred by the Church's condition. (Trial Ct. Op. at 8.) The trial court held that Gallery's testimony, upon which the Board relied, went only "to the sufficiency of the evidence provided, not the adequacy of Siloam's actual efforts, whatever those efforts may have been," and constituted, at most, "a 'mere scintilla' of evidence of the sort that is not substantial enough to support a finding." (Trial Ct. Op. at 8–9.) The trial court likewise discounted Generalis's testimony as insufficient in the face of the appraisal, which concluded that the Church was worth nothing. (Trial Ct. Op. at 9.) With regard to reuse, the trial court held that because Siloam's annual budget was no more than $7,000 and the estimate to repair the Church was at least $5 million, the evidence clearly showed that Siloam could not afford to renovate the Church for any use. (Trial Ct. Op. at 9–10.)

■ On October 19, 2012, CNA appealed the trial court's order to this court.[2] In its appeal, CNA argues that substantial evidence does not support the finding of hardship and that the trial court erred in applying a *de novo* review of the Board's findings regarding hardship.[3] Before reaching these issues, however, we must determine whether this matter is moot.

■ Due to the change in the Church's ownership during the pendency of this case before the trial court, this court concludes that this matter is moot. "It is

---

**2.** While the appeal was pending in this court, CNA filed an emergency motion to stay the demolition of the Church. The motion alleged that the new owner was issued a permit to demolish the Church and that CNA had filed an appeal and requested a stay of the permit. In our December 7, 2012, order denying the motion, this court stated that it appeared that CNA sought to "stay a demolition permit that was issued to an entity that is not a party to the instant action, and it further appear[ed] that an appeal from the grant of the demolition permit as well as a request to stay demolition ha[d] been filed with the ... Board." (Cmwlth. Ct. Order, 12/7/12, at 1.)

**3.** When reviewing an appeal from a trial court order affirming or denying a decision of the Board, and where the trial court takes no new evidence, "this [c]ourt must affirm the Board's decision unless the decision violated the appellant's constitutional rights, the decision was not in accordance with law, the proceedings before the Board violated the practices and procedures of local agencies, or any necessary findings of fact made by the Board [were] not supported by substantial evidence." *Morley v. City of Philadelphia Licenses & Inspections Unit,* 844 A.2d 637, 639 n. 4 (Pa.Cmwlth.2004).

well-established that an actual case or controversy must exist at all stages of the judicial or administrative process. If not, the case is moot and will not be decided by this court." *Utility Workers Union of America, Local 69, AFL–CIO v. Public Utility Commission*, 859 A.2d 847, 849 (Pa.Cmwlth.2004). Although the parties did not address the issue in their initial briefs,[4] this Court may raise the issue of mootness *sua sponte. Id.*

■ The parties acknowledge that while Siloam's appeal from the Board's decision was pending before the trial court, Siloam sold the Church to a new owner, who chose not to intervene in these proceedings. (CNA Br. at 8, 21; CNA Supp. Br. at 4; City Br. at 4 n.3; City Supp. Br. at 3.) "Where a party no longer has an ownership interest in a property which is the subject of a land use appeal, that appeal becomes moot." *Gwynedd Properties, Inc. v. Board of Supervisors of Lower Gwynedd Township*, 160 Pa.Cmwlth. 599, 635 A.2d 714, 716 (1993).

In their briefs to this court on the issue of mootness, the City and CNA both argue that this appeal is not moot because the demolition permit will run with the land.

However, the issue of whether the permit will run with the land is separate from the question of mootness. When Siloam sold the Church and the new owner did not intervene before the trial court, no party with an interest in the Church remained. Thus, the issue became moot, and the trial court erred in failing to dismiss Siloam's appeal.

For these reasons, we vacate the order of the trial court and remand the case to the trial court to dismiss Siloam's appeal from the Board's decision without prejudice to the new owner's right to seek a demolition permit for the Church.[5]

## ORDER

NOW, November 15, 2013, we hereby vacate the October 1, 2012, order of the Court of Common Pleas of Philadelphia County (trial court) and remand the case to the trial court to dismiss Siloam's appeal.

Jurisdiction relinquished.

---

4. By order dated September 18, 2013, this court directed the parties to file supplemental briefs addressing the issue of mootness.

5. Due to our holding on this issue, we do not reach the merits of CNA's arguments.